1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   BRANDY WOOD, an individual,        No. 2:20-cv-00497 WBS DB

13                Plaintiff,

14        v.                            ORDER RE: MOTION TO DISMISS

15   CITY OF SACRAMENTO, a municipal
     corporation; LEAH ANTONETTI, in
16   her individual capacity as a
     police officer for the
17   Sacramento Police Department;
     and DOES 1-50, inclusive,
18
                 Defendants.
19

20                          ----oo0oo----

21

22          Plaintiff Brandy Wood brought this § 1983 action

23   against the City of Sacramento, Sacramento police officer Leah

24   Antonetti, and Doe officials 1-50 (collectively "defendants"),

25   alleging violations of her federal civil rights and of state law

26   based on defendants' alleged conduct during a 2019 protest.

27   (Third Amended Complaint ("TAC") (Docket No. 36).)  She asserts

28   claims for (1) excessive force, (2) unlawful arrest,

                                1

1  (3) retaliation, (4) municipal liability, (5) denial of medical

2  care and state-created danger, (6) violation of California's Tom

3  Bane Act, Cal. Civ. Code § 52.1, (7) battery, (8) negligence,

4  (9) false imprisonment, and (10) false arrest.  (Id.)  Defendants

5  now move to dismiss plaintiff's fourth and sixth claims, alleging

6  municipal liability and violation of the Tom Bane Act.  (Mot.

7  (Docket No. 41-1).)

8  I.   Factual Background[1]

9       In early 2019, the Sacramento District Attorney's

10  office announced it would not press criminal charges against

11  Sacramento police officers who shot and killed Stephon Clark.

12  (TAC at ¶ 11.)  Plaintiff and others joined a march to protest

13  this decision and Clark's killing in East Sacramento on March 4,

14  2019.  (Id. at ¶¶ 1, 11.)

15       Dozens of Sacramento police officers, including

16  Antonetti and Doe officers 1-25, responded to the protest by

17  surrounding the protestors and funneling them into a closed-off

18  location.  (Id. at ¶ 12-13.)  Once there, the officers ordered

19  the protestors to line up and began to arrest them.  (Id. at

20  ¶ 12.)  Plaintiff and her family were among the protestors who

21  lined up to be arrested, pursuant to the officers' orders.  (Id.

22  at ¶ 13.)  While plaintiff was in line, Antonetti, a bicycle

23  officer, rammed her bicycle into plaintiff's leg without warning,

24  breaking plaintiff's leg.  (Id.)  Antonetti did not stop to

25  document the injury or summon medical care, and instead moved on.

26  (Id.)  Plaintiff was then arrested; imprisoned for hours without

27  _____

28       [1]   All facts stated herein are as alleged in the Third
    Amended Complaint.

2

1    medical care, despite complaining about her injury; and

2    ultimately secured medical attention after being released.  (Id.

3    at ¶¶ 2, 14.)

4    II.  Legal Standard

5         Federal Rule of Civil Procedure 12(b)(6) allows for

6    dismissal when the plaintiff's complaint fails to state a claim

7    upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

8    "A Rule 12(b)(6) motion tests the legal sufficiency of a claim."

9    Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  The inquiry

10   before the court is whether, accepting the allegations in the

11   complaint as true and drawing all reasonable inferences in the

12   plaintiff's favor, the complaint has alleged "sufficient facts

13   . . . to support a cognizable legal theory," id., and thereby

14   stated "a claim to relief that is plausible on its face," Bell

15   Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In deciding

16   such a motion, all material allegations of the complaint are

17   accepted as true, as well as all reasonable inferences to be

18   drawn from them.  Id.

19        Courts are not, however, "required to accept as true

20   allegations that are merely conclusory, unwarranted deductions of

21   fact, or unreasonable inferences."  Sprewell v. Golden State

22   Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see Bell Atl., 550

23   U.S. at 555.  Accordingly, "for a complaint to survive a motion

24   to dismiss, the non-conclusory 'factual content,' and reasonable

25   inferences from that content, must be plausibly suggestive of a

26   claim entitling the plaintiff to relief."  Moss v. U.S. Secret

27   Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Ashcroft v.

28   Iqbal, 556 U.S. 662, 678 (2009)).

                                    3

1   III. <u>Discussion</u>

2        A.   <u>Municipal Liability Claim</u>

3             Because § 1983 does not provide for vicarious

4   liability, a local government "may not be sued under § 1983 for

5   an injury inflicted solely by its employees or agents." <u>Monell</u>

6   <u>v. Dept. of Soc. Servs. of the City of N.Y.</u>, 436 U.S. 658, 694

7   (1978).  "Liability may attach to a municipality only where the

8   municipality itself causes the constitutional violation through

9   'execution of a government's policy or custom, whether made by

10  its lawmakers or by those whose edicts or acts may fairly be said

11  to represent official policy.'" <u>Ulrich v. City & Cnty. of San</u>

12  <u>Francisco</u>, 308 F.3d 968, 984 (9th Cir. 2002) (quoting <u>Monell</u>, 436

13  U.S. at 694).  That particular challenged acts "may be fairly

14  said to represent official policy," thereby demonstrating the

15  existence of a § 1983 claim for municipal liability, may be shown

16  in multiple ways relevant to plaintiff's allegations.

17             1.   <u>Unlawful Policy, Custom, or Practice</u>

18             One method of demonstrating municipal liability is by

19  "prov[ing] the existence of a widespread practice that, although

20  not authorized by written law or express municipal policy, is 'so

21  permanent and well settled as to constitute a custom or usage

22  with the force of law.'" <u>City of St. Louis v. Praprotnik</u>, 485

23  U.S. 112, 127 (1988) (plurality opinion) (quoting <u>Adickes v. S.H.</u>

24  <u>Kress & Co.</u>, 398 U.S. 144, 167-68 (1970)).  Such a "policy,

25  custom, or practice" must "constitute[ ] the standard operating

26  procedure of the local government entity" and be "the moving

27  force behind the constitutional violation [the plaintiff]

28  suffered." <u>A.E. ex rel. Hernandez v. Cnty. of Tulare</u>, 666 F.3d

631, 636 (9th Cir. 2012) (citation and internal quotation marks omitted); Ulrich, 308 F.3d at 984 (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)).

At the motion to dismiss stage, a plaintiff must do more than simply allege that a municipal defendant "maintained or permitted an official policy, custom, or practice of knowingly permitting the occurrence of the type of wrongs" alleged elsewhere in the complaint. See A.E., 666 F.3d at 637. The complaint must allege "additional facts regarding the specific nature of that alleged policy, custom[,] or practice"; merely stating the subject to which the policy relates (i.e., excessive force) is insufficient. See id.

Further, "random acts" or "isolated or sporadic incidents" are insufficient to prove the existence of an unconstitutional custom or practice. Navarro v. Block, 72 F.3d 712, 714 (9th Cir. 1995); Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). The plaintiff must instead demonstrate that the custom or practice in question has "sufficient duration, frequency[,] and consistency that [it] has become a traditional method of carrying out policy." Trevino, 99 F.3d at 918. To do so, the plaintiff "must ordinarily point to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." Hyun Ju Park v. City & Cnty. of Honolulu, 952 F.3d 1136, 1142 (9th Cir. 2020) (citations omitted); see, e.g., Perryman v. City of Pittsburg, 545 F. Supp. 3d 796, 800-01 (N.D. Cal. 2021) (considering prior incidents in deciding whether complaint adequately alleged pattern of past violations); Hughey v.

5

1   Drummond, 2:14-cv-00037 TLN AC, 2017 WL 590265, at *6 (E.D. Cal.

2   Feb. 14, 2017) (same); Bagley v. City of Sunnyvale, 16-cv-02250

3   LHK, 2017 WL 344998, at *15 (N.D. Cal. Jan. 24, 2017) (granting

4   motion to dismiss Monell claim because plaintiff failed to

5   "allege any facts that indicate that the [city's] police force is

6   regularly taking actions involving excessive force or unlawful

7   arrests" and instead "only [pled] actions related to his own

8   arrest and prosecution").

9        Plaintiff alleges that defendants have engaged in a

10  "repeated course of conduct . . . tantamount to a custom, policy

11  or repeated practice of condoning and tacitly encouraging the

12  abuse of police authority, and disregard for the constitutional

13  rights of citizens."  (Compl. at ¶ 32.)  In support, plaintiff

14  provides five examples of uses of force by Sacramento police in

15  recent years that plaintiff contends show the requisite pattern

16  of similar violations.  (See id. at ¶ 28.)  These allegations

17  consist of (1) two officers attempting to hit an individual with

18  their patrol car before getting out and shooting him, (2) three

19  officers chasing an individual into a hospital before tasing him

20  and pressing their body weight onto him until he asphyxiated,

21  (3) an officer "choke slamm[ing]" an individual and punching him

22  in the face, (4) officers shooting and killing an individual

23  based on the false belief that he was armed, and (5) an officer

24  hitting a teenager with his patrol car.  (See id.)

25       These allegations fail to plausibly show the existence

26  of an unofficial custom or policy as broad as the one for which

27  plaintiff offers them.  Police officers sometimes use force in

28  the performance of their duties, and five instances in which

6

force is used in different ways and contexts over several years does not indicate abuses of authority or violations of constitutional rights, much less a "standard operating procedure" that is "so permanent and well settled as to constitute a custom or usage with the force of law." A.E., 666 F.3d at 636; Praprotnik, 485 U.S. at 127.[2]  Nor do these allegations demonstrate a "pattern of prior, similar violations of federally protected rights" as would be necessary to indicate a narrower, more specific unlawful policy or custom, such as one of using police vehicles to injure members of the public.  (See Compl. at ¶ 33(c)); Hyun Ju Park, 952 F.3d at 1142.  Two prior instances of using (or attempting to use) patrol cars are insufficient to indicate the existence of a practice so widespread as to effectively constitute municipal policy.

Plaintiff's complaint also includes a variety of other alleged unlawful customs, policies, or practices.  (See Compl. at ¶ 33.)  Many of these lack any accompanying factual allegations suggesting that they are, in fact, customs, policies, or regular practices.  For example, plaintiff alleges that the City, through its police department, routinely "cover[s] up violations of constitutional rights" by "failing to properly investigate . . . complaints or incidents of excessive and unreasonable force." (Id. at ¶ 33(a)(i).)  Yet nowhere in the complaint does plaintiff allege that any prior incidents involving alleged excessive force

---

[2]     For the same reason, plaintiff's allegation that none of the officers involved in these incidents were disciplined does not, on its own, suggest the existence of a "permanent and well settled" practice of "ignoring and/or failing to properly and adequately . . . discipline . . . unlawful police activity." (Compl. at ¶ 33(a)(ii).)

1    were not investigated, nor does she state how investigations that

2    did occur were inadequate.  Similarly, plaintiff also alleges

3    that the City "allow[s], tolerate[s], and/or encourag[es]" police

4    officers failing to file complete and accurate reports, make

5    false statements, intimidate witnesses, or obstruct

6    investigations, among other forms of wrongdoing, (id. at

7    ¶ 33(a)(iii)), but nowhere does the complaint allege any facts

8    involving such misconduct.[3]

9         Finally, plaintiff alleges that the Department has a

10   custom, policy, or practice of "fail[ing] to have and enforce

11   necessary, appropriate, and lawful policies, procedures, and

12   training programs to prevent or correct the unconstitutional

13   conduct, customs, and procedures described in this Complaint."

14   (Id. at ¶ 33(e).)  This, however, is merely an allegation that

15   the City "maintained or permitted an official policy, custom, or

16

17        [3]    The same is true regarding the alleged customs,
     policies, or practices of "allow[ing], tolerat[ing], and/or
18   encourag[ing] a 'code of silence' among law enforcement officers
     and police department personnel," and of "us[ing] or tolerat[ing]
19   inadequate . . . procedures for handling . . . complaints of
     officer misconduct made under California Government Code § 910."
20   (Id. at ¶ 33(b), (d).)
          Similarly, plaintiff also alleges that the City "failed
21   to properly train" Sacramento police officers, (id. at ¶ 34), but
     does not identify how training that police officers received was
22   inadequate.  See Anakin v. Contra Costa Regional Med. Ctr., 16-
     cv-161 MEJ, 2016 WL 2893257, at *5 (N.D. Cal. May 18, 2016)
23   (claim for municipal liability stated based on failure to train
     where complaint identified discrete training issues that were
24   "sufficient to put the County on notice of the specific training
     policies that allegedly caused the constitutional violation at
25   issue").  Such allegations are necessary because "adequately
     trained officers occasionally make mistakes[, and] the fact that
26   they do says little about the training program or the legal basis
     for holding the city liable."  City of Canton v. Harris, 489 U.S.
27   378, 391 (1989).

28

practice of knowingly permitting the occurrence of the type of wrongs" alleged elsewhere in the complaint, which cannot suffice to state a claim for municipal liability.  See A.E., 666 F.3d at 637.  The Third Amended Complaint therefore fails to state a claim for municipal liability based on an unlawful custom, policy, or practice.[4]

### 2.   Action or Ratification by Final Policymaker

A municipality also "may be held liable . . . for acts for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.'"  City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (plurality opinion) (quoting Pembaur v. Cincinatti, 475 U.S. 469, 480 (1986)).  Actions of individual municipal officials may represent official policy, and thereby suffice to demonstrate municipal liability, if the officials "have final policymaking authority."  Id. (emphasis omitted) (quoting Pembaur, 475 U.S. at 483).  Similarly, "when a subordinate's decision is subject to review by the municipality's authorized policymakers," who "approve a subordinate's decision and the basis for it, their ratification [is] chargeable to the municipality because their decision is final."  Id. at 127.  And likewise, "[a]uthority to

_____

[4]    At oral argument, counsel for plaintiff also indicated that one theory of municipal liability plaintiff intends to advance is that the City has an unofficial policy, custom, or practice of corralling all individuals at public protests and arresting them, regardless of whether they have obeyed dispersal orders and without making individualized determinations of probable cause.  Counsel also indicated that this theory could be premised on a failure to train.  However, this theory of municipal liability does not appear in the Third Amended Complaint.

1  make municipal policy . . . may be delegated by an official who

2  possesses such authority." Pembaur, 475 U.S. at 483.

3       Plaintiff alleges that defendant officers unlawfully

4  arrested her and other protestors without probable cause pursuant

5  to "orders from high-ranking supervisors." (Compl. at ¶ 29.)

6  She likewise alleges that "the action of corralling and arresting

7  peaceful protesters without discretion was coordinated and

8  enforce[d] by high-ranking policymakers within the police

9  department." (Id. at ¶ 35.)

10      These allegations, however, fall short of what is

11  required in order to allege municipal liability based on the

12  actions of a final policymaker. As the Supreme Court has made

13  clear, for an official's actions to be attributable to the

14  municipality itself, the official must not simply have some

15  ability to influence policy decisions, but rather must have "the

16  authority to make final policy." Praprotnik, 485 U.S. at 127

17  (citing Pembaur, 475 U.S. at 481-84). Plaintiff has not alleged

18  that her alleged unlawful arrest was performed at the direction

19  of an official with final policymaking authority -- i.e., an

20  official whose policymaking decisions are not subject to review

21  or constraint by more senior officials -- nor by an official who

22  has been delegated such authority. See id. at 123; Pembaur, 475

23  U.S. at 483.[5] Nor has she included allegations indicating the

24  identity of such an official or officials, beyond the fact that

25       [5] The same is true as to plaintiff's averments that
26  defendants' alleged unconstitutional conduct was subsequently
   ratified by senior officials. (See Compl. at ¶¶ 30, 35.) For
27  municipal liability to attach based on such allegations, the
   ratifying officials must likewise possess or have been delegated
28  final policymaking authority. See Pembaur, 475 U.S. at 483.

1  they hold unidentified senior positions within the police

2  department.

3          Because plaintiff is required to allege that the

4  asserted unconstitutional conduct was done at the direction of,

5  or ratified by, an official who possessed or had been delegated

6  final policymaking authority, her complaint fails to state a

7  claim for municipal liability.  Accordingly, that claim will be

8  dismissed.

9          B.   Tom Bane Act Claim

10         Defendants also seek to dismiss plaintiff's claim under

11 the Tom Bane Act, Cal. Civ. Code § 52.1.  The Tom Bane Act is

12 similar to 42 U.S.C. § 1983 in that it "provides a cause of

13 action for violations of a plaintiff's state or federal civil

14 rights," though those violations must also be "committed by

15 'threat[ ], intimidation, or coercion.'"  Chaudhry v. City of Los

16 Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ.

17 Code § 52.1).  The "threat, intimidation, or coercion" need not

18 "be independent from the constitutional violation alleged."

19 Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018)

20 (quoting Cornell v. City & Cnty. of San Francisco, 17 Cal. App.

21 5th 766, 800 (1st Dist. 2017)).

22         A plaintiff pursuing a Tom Bane Act claim must also

23 show that "the [defendant] officer had a specific intent to

24 violate" the state or federal right at issue.  Cornell, 17 Cal.

25 App. 5th at 801-02.  "[S]pecific intent" may be shown by

26 demonstrating that the officer "acted . . . 'in reckless

27 disregard of constitutional or statutory prohibitions or

28 guarantees.'"  See id. at 803-04 (quoting People v. Lashley, 1

1  Cal. App. 4th 938, 948-49 (2d Dist. 1991)); Reese, 888 F.3d at

2  1045 ("[A] reckless disregard for a person's constitutional

3  rights is evidence of a specific intent to deprive that person of

4  those rights.") (quoting United States v. Reese, 2 F.3d 870, 885

5  (9th Cir. 1993)).

6        Plaintiff alleges liability of Antonetti under the Tom

7  Bane Act for "ramm[ing]" her bike into plaintiff, thereby using

8  "unlawful force" against plaintiff and breaking plaintiff's leg.

9  (TAC at ¶¶ 2, 44-49; see Opp. at 7-8 (Docket No. 42).)

10  Defendants argue that this claim fails, however, because the

11  Third Amended Complaint "does not plausibly allege that Ofc.

12  Antonetti specifically intended to violate Wood's rights when she

13  allegedly struck Wood with her bicycle."  (Mot. at 9.)

14        This argument is unavailing.  In the Third Amended

15  Complaint, plaintiff alleges that Antonetti's conduct consisted

16  of "volitional, intentional acts, done with reckless disregard

17  for Plaintiff's rights," and that no act "was accidental or

18  merely negligent."  (TAC at ¶ 48.)  Defendants do not acknowledge

19  this allegation, and it contradicts their contention that "[t]he

20  first time Wood mentions Antonetti's 'intent' is in her

21  opposition [brief]."  (Reply at 6 (Docket No. 43); see Mot. at

22  9.)

23        Moreover, plaintiff's factual allegations regarding

24  Antonetti's conduct during the protest plausibly suggest that

25  Antonetti acted in "reckless disregard" for plaintiff's federal

26  and state constitutional rights to be free from excessive force.

27  Plaintiff alleges that, while she was standing in line to be

28  arrested pursuant to police officers' orders, Antonetti rode her

bike directly into plaintiff without warning, breaking
plaintiff's leg, and that Antonetti did not so much as stop to
check if plaintiff had been hurt.  (TAC at ¶ 2, 13.)

These allegations at minimum suggest that Antonetti
recklessly disregarded the high likelihood that plaintiff would
be injured when Antonetti rode her bike into plaintiff, or that
plaintiff had in fact been injured by the crash.  Because it is
sufficient for plaintiff to allege facts plausibly showing that
Antonetti acted with "reckless disregard" for plaintiff's rights,
see Reese, 888 F.3d at 1045; Cornell, 17 Cal. App. 5th at 803-04;
Navarro, 250 F.3d at 732, plaintiff has stated a claim under the
Tom Bane Act.  Defendants' motion will therefore be denied as to
that claim.

IT IS THEREFORE ORDERED that defendants' motion to
dismiss the complaint (Docket No. 41-1) be, and the same hereby
is, GRANTED as to plaintiff's fourth claim, alleging municipal
liability, and DENIED as to plaintiff's sixth claim, alleging
violation of the Tom Bane Act.  Plaintiff has twenty days from
the date of this Order to file an amended complaint, if she can
do so consistent with this Order.  Any proposed amendment shall
be limited to plaintiff's claim of municipal liability.

Dated:  June 1, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

13