UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| BRANDY WOOD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SACRAMENTO, a municipal corporation; LEAH ANTONETTI, in her individual capacity as a police officer for the Sacramento Police Department; and DOES 1-50, inclusive,<br><br>Defendants. | No. 2:20-cv-00497 WBS DB<br><br><u>ORDER RE: MOTION TO DISMISS</u><br><u>FOURTH AMENDED COMPLAINT</u> |

----oo0oo----

Plaintiff Brandy Wood brought this action under 42 U.S.C. § 1983 against the City of Sacramento and individual Sacramento police officers alleging violations of her federal civil rights and of state law based on defendants' alleged conduct during a 2019 protest. These include a claim for municipal liability based on officers' alleged mass arrest of plaintiff and other protesters despite their alleged compliance

1

with a dispersal order officers gave. (Fourth Amended Complaint ("4AC") at ¶¶ 32-43 (Docket No. 46).) Defendants now move to dismiss plaintiff's municipal liability claim. (Mot. (Docket No. 49-1).)[1]

I. Discussion

In its prior Order, the court dismissed plaintiff's claim for municipal liability for failure to state a claim based on theories of (1) unlawful policy or custom, (2) ratification or decision by an official with final policymaking authority, and (3) failure to train. (See Order re: Mot. to Dismiss Third Am. Compl. ("Order") at 4-11 (Docket No. 45).) The court explained that plaintiff had not adequately alleged the existence of an unlawful policy or custom because she had not pled facts showing the challenged conduct had occurred repeatedly in the past, such as was necessary to show it was "so permanent and well settled as to constitute a custom or usage with the force of law." (See id. at 4-9 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (plurality opinion)).) Plaintiff also had not alleged unconstitutional action or ratification by a final policymaker because although she alleged her arrest was pursuant to "orders from high-ranking supervisors" and "high-ranking policymakers within the police department," she provided no additional information about those individuals' identities, nor did she allege they had "authority to make final policy." (See id. at 9-

---

[1] Because the facts alleged in the Fourth Amended Complaint are largely identical to those in the Third Amended Complaint (Docket No. 36), which was the subject of the court's Order addressing defendants' previous motion to dismiss (see Docket No. 45), the court will omit recitation of the facts alleged except as is necessary to resolve the instant motion.

1  11 (quoting Praprotnik, 485 U.S. at 127).)  Finally, plaintiff
2  failed to state a claim based on failure to train because she
3  "d[id] not identify how training that police officers received
4  was inadequate."  (See id. at 8 n.3 (citing Anakin v. Contra
5  Costa Reg'l Med. Ctr., 16-cv-161 MEJ, 2016 WL 2893257, at *5
6  (N.D. Cal. May 18, 2016)).)

7            Plaintiff has since amended her complaint to include
8  the following new allegations relevant to her municipal liability
9  claim, under the heading "Monell Allegations":

> Sacramento police officers, supervisors and Chief of Police were aware that a protest would occur on March 4, 2019.  They organized, planned and prepared for the lawful assembly of protestors to exercise their First Amendment rights.
> During the peaceful protest, there were no reports of violence or serious crimes.  Dozens of protestors merely chanted and walked the streets in protest of police brutality.  Officers cleared the paths of the streets for the safety of the public.
> As the protests continued into the evening and night hours, high-ranking Sacramento Police Department supervisors decided to abruptly end the lawful assembly of people by issuing dispersal orders.
> When supervisors and officers issued the dispersal orders they gave instructions to protestors on how to properly exit the protest without being subject to arrest.  When the protestors followed those directions, including Plaintiff, they were funneled into another area and arrested without probable cause.
> When Plaintiff and other protestors, including pastors, confronted Defendant Antonetti and higher-ranking officers telling them that they had followed the officers' dispersal order and been led to this location – Defendant and other supervisors told them that it did not matter that they had tried to follow the dispersal orders and everyone would be arrest[ed] with or without probable cause for violation of the dispersal order.

26 (4AC at ¶¶ 15-19.)  The Fourth Amended Complaint also includes
27 the new allegation: "High-ranking officials directed and should
28 have known that the instructions in the dispersal order would

3

exonerate any protestors that followed them yet they instructed their subordinates to arrest anyone without discrimination or probable cause." (Id. at ¶ 33.)

Although these amendments appear intended to support plaintiff's municipal liability claim based on a theory of action or ratification by a final policymaker, they fail to cure the problems identified in the court's prior Order. Although they allege the challenged decisions were made by "high-ranking Sacramento Police Department supervisors," "higher-ranking officers," and "[h]igh-ranking officials," (id. at ¶¶ 17, 19, 33), the Fourth Amended Complaint still does not identify these officials or allege they possess the authority to make final policy. (See Order at 10 & n.5 ("Plaintiff has not alleged that her alleged unlawful arrest was performed at the direction of . . . an official whose policymaking decisions are not subject to review or constraint by more senior officials . . . .") (citing Praprotnik, 485 U.S. at 123; Pembaur v. Cincinatti, 475 U.S. 469, 483 (1986)).) Although the Fourth Amended Complaint refers to the "Chief of Police" once, it does not allege the Chief made any of the challenged decisions, but rather merely alleges the Chief was aware protests would occur. (4AC at ¶ 15.)[2]

In her opposition brief, plaintiff also argues the Fourth Amended Complaint states a claim for municipal liability based on a failure to train. (See Opp. at 6-7 (Docket No. 50).) Plaintiff's new allegations, however, do not address training.

---

[2] Nor does the Fourth Amended Complaint allege the Chief of Police possesses final policymaking authority.

4

(See 4AC at ¶¶ 15-19, 33.)[3]  The Fourth Amended Complaint, like the previous complaint, also alleges that officers "corral[led] dozens of peaceful protesters into an enclosed space then arrest[ed] all of them without reasonable suspicion or probable [cause] in accordance with . . . their training policies."  (4AC at ¶ 34.)  As the court explained in its prior Order, however, neither this allegation or others indicate what these training policies were, how they were deficient, or how they led the officers to arrest plaintiff without probable cause, as is necessary to state a municipal liability claim based on failure to train.  (See Order at 8 n.3 (holding plaintiff failed to state claim based on failure to train because she "d[id] not identify how training that police officers received was inadequate"); Anakin, 2016 WL 2893257, at *5 (claim stated based on failure to train where complaint identified discrete training issues that were "sufficient to put the County on notice of the specific training policies that allegedly caused the constitutional violation at issue").

Finally, plaintiff argues the fact that defendants allegedly arrested plaintiff and others indiscriminately and without individual determinations of probable cause indicates that "the inadequacy of the Defendants['] training . . . was 'so

---

[3]  Although plaintiff points to the Fourth Amended Complaint's new allegation that "[Antonetti] and other supervisors told [plaintiff] that it did not matter that [she] had tried to follow the dispersal orders" and everyone would be arrested with or without probable cause, (4AC at ¶ 19; see Opp. at 6), this allegation gives no indication that this decision was the product of official training, rather than an ad-hoc decision by officers.

5

likely to result in violation of constitutional rights'" that the officers' alleged conduct is itself sufficient to establish municipal liability based on a failure to train.  (See Opp. at 7-9 (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)).)  The Supreme Court has stated that a single incident of unconstitutional conduct alone may, in rare cases, suffice to show a municipality's deliberate indifference to the need for additional or different training.  See Connick v. Thompson, 563 U.S. 51, 63-64 (2011); Harris, 489 U.S. at 390.  However, this argument suffers from the same flaw as addressed above, in that the Fourth Amended Complaint does not specify the obviously necessary or incorrect training at issue, such as by alleging the City provides no training regarding the probable cause requirement or that it specifically trains officers that they may perform arrests without probable cause.[4]  Accordingly, the Fourth Amended Complaint also does not support a claim for municipal liability on this ground.[5]

Because the Fourth Amended Complaint fails to adequately allege the existence of an unconstitutional policy under any theory, plaintiff's claim for municipal liability will

---

[4] Although in her opposition plaintiff states that defendants "conducted themselves in a way to suggest that [t]hey had been trained that they were permitted to conduct mass arrests of protestors regardless of whether they complied with dispersal orders," (Opp. at 7), this allegation does not appear in the Fourth Amended Complaint, nor does it state that such training was in fact provided.

[5] Although the previous complaint included allegations about prior incidents in support of an unlawful custom or practice theory of municipal liability, plaintiff appears to no longer pursue such a theory, as those allegations regarding prior incidents do not appear in the Fourth Amended Complaint.

1  be dismissed.
2        The court notes that, although some amendments have been by stipulation, plaintiff has now amended her complaint four times.  (See Docket Nos. 5, 16, 36, 46.)  In its prior order the court specifically identified numerous deficiencies in plaintiff's municipal liability claim, which plaintiff has failed to rectify in her Fourth Amended Complaint.  Because plaintiff has been unable to state a claim for municipal liability despite these observations, the court can only conclude that it is because that claim "[can]not be saved by any amendment."  In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005).  Accordingly, the court will not grant plaintiff further leave to amend.  See id.

        IT IS THEREFORE ORDERED that defendants' Motion to Dismiss the Fourth Cause of Action of plaintiff's Fourth Amended Complaint, for supervisory and municipal liability (Docket No. 49-1) be, and the same hereby is, GRANTED.

Dated:  August 23, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

7