1  Dean Gazzo Roistacher LLP
   Mitchell D. Dean, Esq. (SBN 128926)
2  Ricardo Baca, Esq. (SBN 319497)
   440 Stevens Avenue, Suite 100
3  Solana Beach, CA  92075
   Telephone:  (858) 380-4683
4  Facsimile:  (858) 492-0486
   E-mail: mdean@deangazzo.com
5          rbaca@deangazzo.com

6  Attorneys for Defendants
   City of Sacramento and Leah Antonetti
7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10 BRANDY WOOD,                        Case No.: 2:20-cv-00497-WBS-DB

11        Plaintiff,                   **DEFENDANTS CITY OF SACRAMENTO
                                       AND LEAH ANTONETTI'S OPPOSITION
12     v.                              TO PLAINTIFF'S MOTION FOR
                                       PARTIAL SUMMARY ADJUDICATION**
13 CITY OF SACRAMENTO, a
   municipal corporation and DOES
14 1-50, inclusive,                    Date:        January 23, 2023
                                       Time:        1:30 p.m.
15        Defendant.                   Courtroom:   5
                                       Judge:       William B. Shubb
16                                     Magistrate:  Deborah Barnes

17

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1

Defendants City of Sacramento and Leah Antonetti's        Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

# TABLE OF CONTENTS

I.    INTRODUCTION................................................................5

II.   STATEMENT OF FACTS..........................................................6

III.  SUMMARY JUDGMENT STANDARDS..................................................9

IV.   ARGUMENT...................................................................10

      A.    There is No Substitute for Admissible Evidence................10

            1.    Wood's Facts In Support Under Her "DEFENDANT
                  ANTONETTI SEIZED PLAINTIFF" Lack Any
                  Evidentiary Support......................................11

            2.    Wood's Facts In Support Under Her "DEFENDANT
                  ANTONETTI ENFORCED AN UNREASONABLE SEIZURE"
                  Lack Any Evidentiary Support.............................13

            3.    Wood's Facts In Support Under Her
                  "DEFENDANT ANTONETTI WAS NEGLIGENT"
                  Lack Any Evidentiary Support.............................18

      B.    Wood Has Not Met Her Burden Of Proof On Motion
            For Partial Summary Adjudication..............................20

            1.    Unlawful Detention Claim.................................22

            2.    Unlawful Arrest Claim....................................25

      C.    Defendants Have Created A Genuine Dispute Of
            Material Fact.................................................29

      D.    Wood's Motion For Partial Summary Adjudication
            Is Devoid Of Specificity.....................................33

V.    CONCLUSION.................................................................34

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

### TABLE OF AUTHORITIES

**Cases**

*Allen v. City of Portland*
        73 F.3d 232 (9th Cir. 1995)................................................25

*Ambat v. City & Cty. of S.F.*
        757 F.3d 1017 (9th Cir. 2014)........................................20, 22

*Anderson v. Liberty Lobby, Inc.*
        477 U.S. 242 (1986)........................................................29, 32

*Atwater v. City of Lago Vista*
        532 U.S. 318 (2001)........................................................26, 28

*Barren v. Harrington*
        152 F.3d 1193 (9th Cir. 1998)........................................26, 27

*Celotex Corp. v. Catrett*
        477 U.S. 317 (1986)................................................................9

*Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*
        626 F.3d 483 (9th Cir. 2010)....................................14, 15, 22

*Clapper v. Amnesty Int'l USA*
        568 U.S. 398 (2013)..............................................................33

*Devereaux v. Abbey*
        263 F.3d 1070 (9th Cir. 2001)..............................................9

*Dubner v. City & Cty. of S.F.*
        266 F.3d 959 (9th Cir. 2001)..............................................26

*Enzo Biochem, Inc. v. Applera Corp.*
        599 F.3d 1325 (Fed. Cir. 2010)..........................................10

*Gallegos v. City of Los Angeles*
        308 F.3d 987 (9th Cir. 2002)..............................................23

*Gregory v. County of Maui*
        523 F.3d 1103 (9th Cir. 2008)..............................................9

*Henry v. United States*
        361 U.S. 98 (1959)..............................................................25

*Hernandez v. Skinner*
        969 F.3d 930 (9th Cir. 2020)..............................................22

*Houghton v. South*
        965 F.2d 1532 (9th Cir. 1992)........................................20, 21

3

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

*Hunt v. Turner*
    No. 2:14-cv-1286 MCE CKD P
    2016 U.S. Dist. LEXIS 58835
    (E.D. Cal. May 3, 2016)..................................................*Passim*

*Kollin v. City of Tehachapi*
    2020 U.S. Dist. LEXIS 101995
    (E.D. Cal. June 10, 2010)...................................................9

*MacKinney v. Nielsen*
    69 F.3d 1002 (9th Cir. 1995)..............................................25

*McFarland v. App Pharm., LLC*
    No. C10-1746RSL, 2012 U.S. Dist. LEXIS 14784
    (W.D. Wash. Feb. 7, 2012).................................................29

*S. Cal. Gas Co. v. City of Santa Ana*
    336 F.3d 885 (9th Cir. 2003)..........................................20, 21

*Scott v. Harris*
    550 U.S. 372 (2007).........................................................9

*Terry v. Ohio*
    392 U.S. 1 (1968)......................................................23, 24

*United States v. Arvizu*
    534 U.S. 266 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)............23

*United States v. Gonzales*
    749 F.2d 1329 (9th Cir. 1984)............................................26

*United States v. Montero-Camargo*
    208 F.3d 1122 (9th Cir. 2000)........................................23, 31

*United States v. Struckman*
    603 F.3d 731 (9th Cir. 2010)........................................26, 28

*United States v. Valdes-Vega*
    738 F.3d 1074 (9th Cir. 2013)............................................23

*Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys.)*
    482 F.3d 1118 (9th Cir. 2007)......................................10, 17, 18

**Statutes**

42 U.S.C. section 1983................................................19, 21, 26

Fed. R. Civ. P. 56......................................................*Passim*

Penal Code section 409..................................................*Passim*

4

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

1

**I.**

2

**INTRODUCTION**

3      At the eleventh hour, literally at 11:17 p.m., plaintiff

4   Brandy Wood ("Wood") filed her Motion for Partial Summary

5   Adjudication.  Defendants City of Sacramento and Leah Antonetti

6   (collectively "Defendants") suspect this was done is direct

7   response to the Defendants having filed their Motion for Summary

8   Judgment, or in the alternative, Partial Summary Judgment, that

9   same day at 3:19 p.m.  Defendants further suspect that Wood's

10  instant (and anemic) motion was filed to muddy the waters and in

11  an attempt to confuse the Court.  Wood's Motion for Partial

12  Summary Adjudication is glaringly defective in style and

13  substance.

14      More specifically, Wood identifies fifty-eight (58) facts

15  in her Separate Statement of Undisputed Facts, then only

16  incorporates two of these fifty-eight (58) facts into her legal

17  analysis.  The facts that she relies on in her legal analysis

18  are misrepresentations, legal conclusions couched in factual

19  allegations, and are conjured out of thin air simply to fit into

20  her narrative.  More alarmingly is that the "facts" that Wood

21  incorporates into her legal analysis section (with the exception

22  of the 2 out of 58), have zero evidentiary support.  None. This

23  alone is enough to deny Wood's Motion for Partial Summary

24  Adjudication.

25      Another reason to deny Wood's Motion for Partial Summary

26  Adjudication is the fact that she has failed to meet her burden

27  of persuasion and production.  Of the four claims that she seeks

28  summary adjudication for on the issue of liability, only three

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

1   are analyzed.  In actuality, only the unlawful seizures claims

2   include a legal analysis portion.  Albeit, supported by

3   unsubstantiated facts that are not included in Wood's Statement

4   of Facts of her Separate Statement of Undisputed Facts.  Wood's

5   argument on her negligence claim is a grand total of one sentence,

6   which goes like this, "For all the aforementioned reasons,

7   Plaintiff has already explained above, Defendant used excessive,

8   negligent force against Plaintiff."  Again, this legal conclusion

9   and misrepresentation has zero evidentiary support.

10      As the Court will see, Wood has not met her initial burden

11   of persuasion or production, thus, she has failed to shift the

12   burden onto Defendants.  For this, and the following reasons

13   fleshed out below, Wood's Motion for Partial Summary Adjudication

14   should be denied.

15                              **II.**

16                     **STATEMENT OF FACTS**

17      Although dispersal orders were being given at the Trader

18   Joe's parking lot, officers were still allowing people that

19   wanted to leave to leave the area.  (Defendants' Separate

20   Statement of Undisputed Facts ("DEF. SSUF") no. 1.)  Groups of

21   protestors were able to leave through Folsom Blvd.  (DEF. SSUF

22   no. 2.)  There were avenues for people to leave the area.  (DEF.

23   SSUF no. 3.)  Those that walked away were free to leave, but

24   those that stayed were subject to arrest.  (DEF. SSUF no. 4.)

25   At no point did Wood approach Ofc. Antonetti while they were in

26   the area of Trader Joe's to ask if she could leave the area.

27   (DEF. SSUF no. 5.)  At no point did Ofc. Antonetti tell Wood at

28   ///

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

or near the Trader Joe's that she could not leave the area. (DEF. SSUF no. 6.)

At approximately 9:15 p.m., seconds after a dispersal order was given, which was audible and clear, at the parking lot of the Trader Joe's, Wood approached an officer to ask which route to take to leave the protest. (DEF. SSUF no. 7.) At approximately 9:16 p.m., Wood is told by a police officer that she can leave by taking an alley adjacent to the Trader Joe's. (DEF. SSUF no. 8.) The body worn camera footage shows other protestors leaving the area through the alley adjacent to the Trader Joe's. (DEF. SSUF no. 9.)

At some point, the crowd moved onto the area of Folsom Blvd and 51st Street. (DEF. SSUF no. 10.) Protestors were not free to leave once the bike officers formed a skirmish line on the 51st Street bridge. (DEF. SSUF no. 11.) There was probable cause to arrest each of the protestors. (DEF. SSUF no. 12.) At approximately 9:52 p.m., Wood approaches Officer Leah Antonetti ("Ofc. Antonetti") while Ofc. Antonetti is on the skirmish line of the 51st Street bridge. (DEF. SSUF no. 13.) A clergywoman named Pamela McNally-Anderson sees Wood yelling at Ofc. Antonetti so she walks over to try to create calm. (DEF. SSUF no. 14.) Ms. McNally stood directly in front of Wood and the female police officer was directly behind her. (DEF. SSUF no. 15.) Ms. McNally was still standing between Wood and Ofc. Antonetti when the crowd was pushed. (DEF. SSUF no. 16.) Ms. McNally says "ouch, ouch, ouch" when she is pinned between Wood and Ofc. Antonetti, which is recorded on Ofc. Antonetti's body worn camera footage. (DEF.

///

7

Defendants City of Sacramento and Leah Antonetti's            Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

1   SSUF no. 17.)  Ms. McNally did not see Ofc. Antonetti strike Wood
2   with her bicycle.  (DEF. SSUF no. 18.)

3        Wood cannot identify the officer who was holding the bicycle
4   that allegedly caused her injury. (DEF. SSUF no. 19.)  Wood does
5   not even know if the officer was male or female. (DEF. SSUF no.
6   20.)  She does not know the name of the officer that allegedly
7   injured her. (DEF. SSUF no. 21.)  Wood did not see the face of
8   the officer who was holding the bicycle that allegedly caused
9   the injury to her left foot. (DEF. SSUF no. 22.)  She was not
10  looking down when she was injured. (DEF. SSUF no. 23.)

11       Wood was eventually arrested by Officer Chad Lewis at
12  approximately 10:20 p.m. (DEF. SSUF no. 24.)  Ofc. Antonetti
13  did not arrest anybody on March 4, 2019. (DEF. SSUF no. 25.)
14  Ofc. Lewis, alone, arrested Wood on March 4, 2019 while she was
15  on the 51st Street bridge. (DEF. SSUF no. 26.)  Ofc. Lewis had
16  probable cause to arrest Wood based on his observations and
17  belief that Wood had committed a public offense in his presence.
18  (DEF. SSUF no. 27.)  Ofc. Lewis arrested Wood on March 4, 2019
19  for violation of Penal Code section 409 – a misdemeanor crime
20  for failing to disperse and remain present in an area, once an
21  unlawful assembly is declared. (DEF. SSUF no. 28.)  Based on
22  Ofc. Lewis's observations, he had reasonable cause to believe
23  that Wood failed to disperse, and remained present in the area
24  where an unlawful assembly had been declared and multiple audible
25  orders to disperse had been given. (DEF. SSUF no. 29.)  Wood
26  testified that Officer Lewis was the arresting officer. (DEF.
27  SSUF no. 30.)

28  ///

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

1

2

### III.

### SUMMARY JUDGMENT STANDARDS

3

4

5

6

7

8

9

10

   A moving party is entitled to summary judgment or partial summary judgment upon demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56. "When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.' [Citation]." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

11

12

13

14

15

   The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

16

17

18

19

20

21

   In cases dealing with an officer's use of force, the court cannot adopt plaintiff's version of facts if contradicted by a video. *Id*. at 380; *Gregory v. County of Maui*, 523 F.3d 1103, 1108 (9th Cir. 2008). Rather, the court must "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-381 (2007).

22

23

24

25

26

   "[W]here there is video evidence of the incident giving rise to the excessive force claim, a court must 'view the facts depicted by the videotape.'" See *Kollin v. City of Tehachapi*, 2020 U.S. Dist. LEXIS 101995 *1, *28 (E.D. Cal. June 10, 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 380-381 (2007).

27

///

28

///

9

Defendants City of Sacramento and Leah Antonetti's        Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

**IV.**

**ARGUMENT**

**A.   There is No Substitute for Admissible Evidence**

A party cannot create a "genuine" issue of "material" fact simply by making assertions in its legal memoranda. *Hunt v. Turner*, No. 2:14-cv-1286 MCE CKD P, 2016 U.S. Dist. LEXIS 58835, at *15 (E.D. Cal. May 3, 2016) (quoting *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325 (Fed. Cir. 2010)).   Counsel's arguments and statements are not evidence and do not create material fact issues capable of defeating an otherwise valid motion. *Wood v. Stratos Prod. Dev., LLC* (*In re Ahaza Sys.*), 482 F.3d 1118, 1122 n.1 (9th Cir. 2007).

Wood's Statement of Facts section under her Motion for Partial Summary Adjudication included seven (7) pages of "material" facts. (ECF No. 57, pp. 2-8.) Her Separate Statement of Undisputed Facts included a total of fifty-eight (58) "material" facts. (See generally ECF No. 57.11.) Shockingly, out of these seven pages worth, and fifty-eight undisputed facts, Wood's legal argument section only cites to two (2) (yes two) of those 58 facts that are in her Separate Statement of Undisputed Facts. (See generally ECF Nos. 57 and 57.11.) The facts relied on by Wood are nothing more than conclusory statements without any evidentiary support.   These facts will be disputed by Defendants.   More specifically, with the exception of these two facts, the following facts relied on by Wood in her legal analysis are not included in her Separate Statement of Undisputed Facts nor her Statement of Facts.

///

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

1.    **Wood's Facts In Support Under Her "DEFENDANT ANTONETTI SEIZED PLAINTIFF" Lack Any Evidentiary Support**

First Sentence: "Here it is indisputable that Brandy Wood and others were 'seized' for purposes of the Fourth Amendment in the Trader Joe's parking lot and – again – on the bridge at 51st Street."  (ECF No. 57 at p. 10: lines 14-15.)

This statement is a legal conclusion couched as a factual allegation.  Wood did not include this "fact" in either her Statement of Facts or her Separate Statement of Undisputed Facts. (See generally ECF Nos. 57 and 57.11.)  Moreover, at no point has Wood provided any evidence to support this contention. Lastly, this contention is disputed because Wood was not seized at the Trader Joe's parking.

Second Sentence: "Furthermore, multiple witnesses testified that protestors were told, intimated or blocked off from leaving both at the Trader Joe's Parking Lot, along 51st Street and on the overpass."  (ECF No. 57 at p. 10: lines 16-17.)

As an initial matter, only one percipient witness, Ms. McNally, has been deposed in this case.  It is unknown to whom Wood is referring to when she says "multiple witnesses." Nevertheless, this statement is also not referenced in Wood's Statement of Facts or her Separate Statement of Undisputed Facts. (See generally ECF Nos. 57 and 57.11.)  Nor has she provided any evidence to support this contention.  Additionally, this contention is disputed because Ofc. Antonetti's body worn camera footage clearly shows her instructing at least one vehicle how to exit the Trader Joe's parking lot.  Exhibit 5 – Ofc. Antonetti's Body Worn Camera at Axon time 05:24:50 of Buelna's

Defendants City of Sacramento and Leah Antonetti's    Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

Decl.  At no point did Wood approach Ofc. Antonetti while they were in the area of Trader Joe's to ask if she could leave the area.  (DEF. SSUF no. 5.)  At no point did Ofc. Antonetti tell Wood at or near the Trader Joe's that she could not leave the area. (DEF. SSUF no. 6.)  In fact, at approximately 9:16 p.m., Wood is told by a police officer that she could leave by taking an alley adjacent to the Trader Joe's. (DEF. SSUF no. 8.)  This fact (which is not including in Wood's SSUF) is disputed based on the body worn camera footage attached by Wood and Defendants as exhibits to the instant motion.

Third Sentence: "Finally once Plaintiff was on the overpass, Defendant Antonetti explicitly told Plaintiff she was not free to leave and used her bicycle to keep her from dispersing." (ECF No. 57 at p. 10: lines 17-19.)  Here, again, this contention is not included in Wood's Statement of Facts or her Separate Statement of Undisputed Facts.  (See generally ECF Nos. 57 and 57.11.)  Moreover, this is a disputed fact because a review of Ofc. Antonetti's reveals that Ofc. Antonetti never told Wood she could not leave while they were on the overpass.  Ex. 5 of Ofc. Antonetti's Body Worn Camera at Axon time 05:24:50 of Buelna's Decl. from Axon time 05:50:00 to 06:10:00.  This fact is properly disputed.

Fourth Sentence: "For the aforementioned reasons – as a matter of law – Defendant Antonetti had **seized** Plaintiff at the Trader Joe's parking lot, along 51st Street and on the bridge." (ECF No. 57 at p. 10: lines 21-22.)  This statement is a legal conclusion couched as a factual allegation.  Wood did not include this "fact" in either her Statement of Facts or her Separate

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

Statement of Undisputed Facts. (See generally ECF Nos. 57 and 57.11.) Nor has she provided any evidence to support this "fact." She cannot, and has not, met her burden of establishing evidence to support this assertion.

    **2.**    <u>**Wood's Facts In Support Under Her "DEFENDANT ANTONETTI ENFORCED AN UNREASONABLE SEIZURE" Lack Any Evidentiary Support**</u>

<u>First Sentence</u>: "Here, both officers' training and dispersal orders given were to explicitly disperse protestors from 50th St/Folsom and be arrested if they remained at the intersection." (ECF No. 57 at p. 11: lines 23-24.) Defendants, admittingly, find this sentence confusing. It appears as if Wood is trying to either say, that dispersal orders were given at 50th Street and Folsom Blvd and/or that the dispersal orders were made pursuant to the training received by officers. First, this is a disputed fact because Wood was not seized at 50th Street and Folsom, which is near the general area of the Trader Joe's parking lot. At approximately 9:15 p.m., seconds after a dispersal order was given, which was audible and clear, at the parking lot of the Trader Joe's, Wood approached an officer to ask which route to take to leave the protest. (DEF. SSUF no. 7.) At approximately 9:16 p.m., Wood is told by a police officer that she can leave by taking an alley adjacent to the Trader Joe's. (DEF. SSUF no. 8.) The body worn camera footage shows other protestors leaving the area through the alley adjacent to the Trader Joe's. (DEF. SSUF no. 9.)

    Second, Wood, again, adds her own conclusions into this "fact." Again, "[a] party cannot create a "material" fact simply

Defendants City of Sacramento and Leah Antonetti's    Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

by making assertions in its legal memoranda. *Hunt*, 2016 U.S. Dist. LEXIS 58835, at *15 (E.D. Cal. May 3, 2016). Wood does not specifically identify the evidence supporting her contention that protestors were going to be arrested at the intersection of 50th Street and Folsom. (ECF No. 57 at p. 11: lines 23-24 and see generally ECF No. 57.11.) Yes, dispersal orders were given at the intersection of 50th Street and Folsom, but the crowd had not yet been seized nor arrested. Wood needs to direct the Court to the particular parts of materials in the record that support the "fact" that anyone was arrested at the intersection of 50th Street and Folsom Blvd after the dispersal orders were given. "Judges are not like pigs, hunting for truffles buried in briefs." *Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010). Wood failed to cite to which undisputed fact she was relying on to support this contention. Conversely, Defendants have provided material facts and evidence to support the facts that Wood was neither seized nor arrested on the intersection of 50th Street and Folsom Blvd. (DEF. SSUF nos. 1-4 and 7-9.)

Defendants concede that this statement is some type of iteration of different facts found within Wood's Separate Statement of Undisputed Facts at number 6. Regardless, it is still disputed by Defendants by deposition testimony from Ofc. Antonetti and Deputy Chief Norm Leong, and the body worn camera footage from Office Kirby Giusti ("Ofc. Giusti").

Second Sentence: "It is undisputed that Plaintiff and others proceeded onto 51st street [sic] in efforts to disperse but were kept from dispersing on side streets, corralled onto the bridge

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

1    – even after being told to go that direction – and arrested

2    anyhow." (ECF No. 57 at p. 11: line 24 – p. 12: line 2.)

3        Here, Wood makes a bold statement that is unsupported by

4    any evidence.  This inflammatory statement is not included in

5    Wood's Statement of Facts or in her Separate Statement of

6    Undisputed Facts.  (See generally ECF Nos. 57 and 57.11.)  This

7    "fact" is nothing more than a legal conclusion couched as a

8    factual allegation.  However, "[a] party cannot create a

9    "material" fact simply by making assertions in its legal

10   memoranda.  *Hunt*, 2016 U.S. Dist. LEXIS 58835, at *15.  Simply

11   because Wood included this unsupported statement within her

12   memorandum does not make it a material fact.  This is a disputed

13   fact because protestors, including Wood, were not free to leave

14   only once bike officers formed a skirmish line on the 51st Street

15   bridge.  (DEF. SSUF no. 11.)

16       <u>Third Sentence</u>: "Notably SPD provided training that

17   protestors cannot be arrested for trying to comply with a

18   dispersal order." (ECF No. 57 at p. 12: lines 2-3.)  While some

19   variation of this fact is in the separate statement, Wood still

20   failed to identify to which number within the separate statement

21   this fact belongs to.  The Court should not be expected to hunt

22   for the evidence that supposedly supports this material fact.

23   *Christian Legal Soc'y Chapter of Univ. of Cal.*, 626 F.3d at 488.

24   This fact will be disputed.  In fact, there is direct testimony

25   from Deputy Chief Norm Leong that the group of people had been

26   given multiple dispersal orders and opportunities to leave. And

27   in fact, some people did leave but some chose not to leave.

28   ///

Defendants City of Sacramento and Leah Antonetti's        Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

Defendants concede that some variation of this statement can be found in Wood's Separate Statement of Undisputed Facts at number 51.

Fourth Sentence: "Here, not only was an arrest made but Defendant Antonetti used actual force to effect the arrest and fractured Plaintiff's leg when she struck her with the bike – which was inherently unreasonable since she lacked probable cause." (ECF No. 57 at p. 12: lines 4-7.)   There are three things glaringly wrong with this statement.

First, at no point did Ofc. Antonetti arrest anyone on March 4, 2019. (SSFU no. 25.)  Wood was arrested by Officer Chad Lewis at approximately 10:20 p.m.   (DEF. SSUF no. 24.)   Wood knows quite well that the arresting officer was Ofc. Lewis and not Ofc. Antonetti.  (DEF. SSUF no. 30.)

Second, Wood has not, and cannot, present evidence that the force that caused the injury to her left foot came from Ofc. Antonetti.   At deposition, she testified that she could not identify the officer who was holding the bicycle that allegedly caused her injury. (DEF. SSUF no. 19.) Nor does she know if the officer that allegedly struck her with a bicycle was male or female.   (DEF. SSUF no. 20.)   Even more, Wood did not see the face of the officer who was holding the bicycle that allegedly caused the injury to her left foot (DEF. SSUF no. 22) nor does she know the officer's name (DEF. SSUF no. 21).   Lastly, Wood admitted that she was not looking down when she was injured (DEF. SSUF no. 23), which prevented her from seeing or knowing how precisely she was injured.   It is clear that Wood does not know the identity (or the sex, face, name) of the individual who

16

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

allegedly injured her.  Here, she simply threw out another assertion without any evidentiary support for the contention that Ofc. Antonetti used force against her.  Simply because this legal conclusion is in the memorandum does not make it evidence nor does it make it a material fact. *In re Ahaza Sys.*, 482 F.3d at 1122 n.1.

Third, there was probable cause to arrest Wood.  Ofc. Lewis had probable cause to arrest Wood based on his observations and belief that Wood had committed a public offense in his presence. (DEF. SSUF no. 27.)  Ofc. Lewis arrested Wood on March 4, 2019 for violation of Penal Code section 409 – a misdemeanor crime for failing to disperse and remain present in an area, once an unlawful assembly is declared. (DEF. SSUF no. 28.)  Based on Ofc. Lewis's observations, he had reasonable cause to believe that Wood failed to disperse, and remained present in the area where an unlawful assembly had been declared and multiple audible orders to disperse had been given. (DEF. SSUF no. 29.)

This erroneous statement is easily disputed with Wood's own deposition testimony and the declaration of Ofc. Lewis.

<u>Fifth Sentence</u>: "Here, Plaintiff was walking home after peacefully protesting and in compliance with a dispersal order to leave 50th St/Folsom." (ECF No. 57 at p. 12: lines 24-25.)

This, like so many others above, is a statement that is unsupported by any evidence.  This statement is not found in Wood's Statement of Facts nor is it in her Separate Statement of Undisputed Facts.  This appears to be yet another assertion (without evidence) that Wood is trying to pawn off as a material

///

17

Defendants City of Sacramento and Leah Antonetti's         Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

fact, which she cannot do despite having tried multiple times in her memorandum. *Hunt*, 2016 U.S. Dist. LEXIS 58835, at *15. Again, just because Wood included this statement in her memorandum does not make it evidence or a material fact. *In re Ahaza Sys.*, 482 F.3d at 1122 n.1.

Sixth Sentence: "She even told Defendant that she had been told to go this direction before she was struck." (ECF No. 57 at p. 12: line 25 – p. 13: line 1.)

This, again, is another statement that is not found in either Wood's Statement of Facts or her Separate Statement of Undisputed Facts. Wood has no evidence to support this statement, nor will she be able to produce any evidence that Ofc. Antonetti used forced against her. Ofc. Antonetti's body worn camera footage captures Wood yelling profanities at her moments before the crowd gets pushed into the bike officers. Ex. 5 – Ofc. Antonetti's Body Worn Camera at Axon time 05:52:38 of Buelna's Decl. During this brief interaction, Ofc. Antonetti says nothing to Wood. *Id.* Wood has failed (yet again) to cite to any evidence that would support this statement. Simply including this statement into her legal analysis does not make it a material fact or evidence. *In re Ahaza Sys.*, 482 F.3d at 1122 n.1.

**3.** **Wood's Facts In Support Under Her "DEFENDANT ANTONETTI WAS NEGLIGENT" Lack Any Evidentiary Support**

First Sentence (and only): "For all of the aforementioned reasons, Plaintiff has already explained above, Defendant used excessive, negligence force against Plaintiff." (ECF No. 57 at p. 13: lines 21-22.)

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

This statement is a legal conclusion couched as a factual allegation. Wood did not include this "fact" in either her Statement of Facts or her Separate Statement of Undisputed Facts. (See generally ECF Nos. 57 and 57.11.) Moreover, at no point has Wood provided any evidence to support her contention that Ofc. Antonetti used force against her, or was in any way shape or form, negligent. Conversely, Defendants have provided evidence that Wood could not identify the officer who was holding the bicycle that allegedly caused her injury. (DEF. SSUF no. 19.) Nor does she know if the officer that allegedly struck her with a bicycle was male or female. (DEF. SSUF no. 20.) Even more, Wood did not see the face of the officer who was holding the bicycle that allegedly caused the injury to her left foot (DEF. SSUF no. 22) nor does she know the officer's name (DEF. SSUF no. 21). Lastly, Wood admitted that she was not looking down when she was injured (DEF. SSUF no. 23), which prevented her from seeing or knowing how precisely she was injured.

Furthermore, Wood omits any legal analysis of her excessive force claim under 42 U.S.C. Section 1983 for violation of her Fourth Amendment rights. Surprisingly, she is requesting that the Court grant her motion for adjudication on her Section 1983 excessive force claim and her negligence claim against Ofc. Antonetti based solely on one sentence of legal analysis. It is undeniable that there is most certainly a dispute of material fact as to whether Ofc. Antonetti ever used excessive force (or any force) against Wood on March 4, 2019. Moreover, all of the available evidence shows Antonetti used NO force on Wood.

///

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

Of Wood's eleven (11) sentences of legal analysis, only two actually relied on some variation of a fact that was in her seven pages of her Statement of Facts and fifty-eight material facts under her Separate Statement of Undisputed Facts.  Everything else was simply a statement that lacked evidentiary support and was pulled from the ether.  Either that, or it was a legal conclusion couched as a factual allegation.  In either scenario, Wood's Motion for Partial Summary Adjudication falls far short of meeting her burden to shift the burden onto the Defendants.

**B.**    **Wood Has Not Met Her Burden Of Proof On Motion For Partial Summary Adjudication**

The party moving for summary judgment has both an initial burden of production and the ultimate burden of persuading the court that there is no "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Given the fact that a summary judgment is a drastic device that cuts off the ability of a party to present their case to a jury, the moving party bears the "heavy burden" of demonstrating the absence of any triable issue of material fact. *Ambat v. City & Cty. of S.F.*, 757 F.3d 1017, 1031 (9th Cir. 2014).  The party with the burden of persuasion at trial must establish "beyond controversy every essential element of its" claim.  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). This requires the moving party to establish beyond controversy every essential element of its claim or defense. *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).

///

Defendants City of Sacramento and Leah Antonetti's    Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

Here, Wood has not met her initial responsibility of establishing beyond controversy every (or any) essential element of her claims for (a) Excessive Force; or (b) Negligence. As an initial matter, Wood's Motion for Summary Adjudication fails to include any legal argument/analysis, or even statutory authority, for her first cause of action for Fourth Amendment – Excessive Force under 42 U.S.C. Section 1983 claim against Ofc. Antonetti. (See generally ECF No. 57.) At trial, Wood will bear the burden of persuasion at trial that Ofc. Antonetti used excessive force. Thus, in order to prevail at the summary adjudication stage, she has the burden of establishing "beyond controversy every essential element" of her excessive force claim. *S. Cal. Gas Co.*, 336 F.3d at 888. Clearly, she has not met this burden because her moving papers are devoid of any of the elements for a Fourth Amendment – Excessive Force under 42 U.S.C. Section 1983 claim. Therefore, the burden has not shifted to Defendants.

Similarly, Wood has failed to meet her initial burden of satisfying every essential element for her eighth cause of action for Negligence against Ofc. Antonetti. This is a minimum requirement at the motion for summary judgment/adjudication stage. *Houghton*, 965 F.2d at 1536. While Wood does cite to some case law related to negligence, her legal analysis is limited to the following sentence: "For all the aforementioned reasons, Plaintiff has already explained above, Defendant used excessive, negligent force against Plaintiff." (ECF No. 57 at p. 13: lines 21-22.) This anemic analysis lacks any of the rigorous standards that are well established in Federal Rule of Civil Procedure 56(a)-(b) and case law. Because a summary judgment is such a

Defendants City of Sacramento and Leah Antonetti's
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

Case No.: 2:20-cv-00497-WBS-DB

drastic device, the moving party bears the "heavy burden" of demonstrating the absence of any triable issue of material fact. *Ambat*, 757 F.3d at 1031.  Here, Wood makes no mention of the basic tenets of negligence for use of nondeadly force, namely (1)that Ofc. Antonetti used force to [arrest/detain/[,/or] prevent escape of/[,/or] overcome resistance by] Wood; (2) that the amount of forced used by Ofc. Antonetti was unreasonable; (3) that Wood was harmed; and (4) that Ofc. Antonetti's use of unreasonable force was a substantial factor in causing Wood's harm.  (CACI No. 440. Negligent Use of Nondeadly Force by Law Enforcement Officers in Arrest or Other Seizure – Essential Factual Elements).  Each of these four essential elements should have been discussed by Wood, but none were. (See generally ECF No. 57.)  It is not the Court's job to search through Wood's facts to satisfy the essential elements of negligence. *Christian Legal Soc'y Chapter of Univ. of Cal.*, 626 F.3d at 488 ["Judges are not like pigs, hunting for truffles buried in briefs."].

As to Wood's unlawful seizures claims, here too, she failed to meet her burden of establishing that there is "no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## 1. Unlawful Detention Claim

The Fourth Amendment protects individuals "against unreasonable . . . seizures."  U.S. Const. amend. IV.  "There are two categories of police seizures under the Fourth Amendment: [detentions] and . . . arrests." *Hernandez v. Skinner*, 969 F.3d 930, 937 (9th Cir. 2020).

///

Defendants City of Sacramento and Leah Antonetti's       Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

1       "Police officers may conduct a brief, investigative stop of

2   an individual when they have reasonable suspicion that the person

3   apprehended is committing or has committed a criminal offense."

4   *Terry v. Ohio*, 392 U.S. 1, 21-22, (1968). "The reasonable

5   suspicion standard is a less demanding standard than probable

6   cause, and merely requires a minimal level of objective

7   justification." *Gallegos v. City of Los Angeles*, 308 F.3d 987,

8   990 (9th Cir. 2002); *United States v. Valdes-Vega*, 738 F.3d 1074,

9   1078 (9th Cir. 2013) ("the reasonable suspicion standard is not

10  a particularly high threshold to reach.") Police officers must

11  have "specific, articulable facts which, when considered with

12  objective and reasonable inferences, form a basis for

13  particularized suspicion." *United States v. Montero-Camargo*, 208

14  F.3d 1122, 1129 (9th Cir. 2000) (en banc). Courts must consider

15  all the circumstances to determine whether an officer had

16  reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266, 273,

17  122 S. Ct. 744, 151 L. Ed. 2d 740 (2002).

18      Here, Wood was detained on the 51st Street bridge.  Contrary

19  to Wood's unsubstantiated contention, she was not seized at the

20  Trader Joe's parking lot.  Although dispersal orders were being

21  given at the Trader Joe's, officers were still allowing people

22  that wanted to leave to leave.  (DEF. SSUF no. 1.)

23      At this point, the protestors were not yet seized because

24  they were permitted to leave the area.  The body worn camera

25  footage (attached as Exhibit B) from Ofc. Giusti shows several

26  protestors leaving the Trader Joe's parking lot through an

27  adjacent alley.  (DEF. SSUF no. 9.)  None of those individuals

28  were detained or were told they were not permitted to leave.

23

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

1   Groups of protesters were able to leave through Folsom Blvd.

2   (DEF. SSUF no. 2.)  There were avenues for people to leave the

3   area.  (DEF. SSUF no. 3.)  Those that walked away were free to

4   leave, but those that stayed were subject to arrest. (DEF. SSUF

5   no. 4.)

6       At approximately 9:15 p.m., seconds after a dispersal order

7   was given, which was audible and clear, at the parking lot of

8   the Trader Joe's, Wood approached an officer to ask which route

9   to take to leave the protest.  (DEF. SSUF no. 7.)   At

10  approximately 9:16 p.m., Wood is told by a police officer that

11  she can leave by taking an alley adjacent to the Trader Joe's.

12  (DEF. SSUF no. 8.)  Clearly, Wood was free to leave and had not

13  yet been detained by Sacramento Police Department ("SPD").

14      At no point did Ofc. Antonetti engage, speak with, detain,

15  or seize Wood at the Trader Joe's.  Wood did not approach Ofc.

16  Antonetti while they were in the area of Trader Joe's to ask if

17  she could leave the area.  (DEF. SSUF no. 5.) At no point did

18  Ofc. Antonetti tell Wood at or near the Trader Joe's that she

19  could not leave the area.  (DEF. SSUF no. 6.)

20      The crowd then begins to move from Folsom Blvd. and 51st

21  Street down the road.  (DEF. SSUF no. 10.)  Protestors were not

22  free to leave once the bike officers formed a skirmish line on

23  the 51st Street bridge. (DEF SSUF no. 11.)  The seizure of Wood

24  occurred when she was not free to leave while on the 51st Street

25  bridge.  See *Terry*, 392 U.S. at 19 n.16 (seizures occur when

26  police officers, through force or authority, restrain an

27  individual's liberty).

28  ///

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

The SPD had beyond reasonable suspicion to detain the protestors.  Once the protest was deemed to be unlawful, and announcements were made of that fact, there was probable cause for police officers to arrest those that remained in the area pursuant to Penal Code section 409, which makes it a misdemeanor crime for failing to disperse and remain present in an area, once an unlawful assembly is declared.  In fact, Ofc. Lewis arrested Wood on March 4, 2019 because he had probable cause to arrest based on the fact that she violated Penal Code section 409 – a misdemeanor crime for failing to disperse and remain present in an area, once an unlawful assembly is declared.  (DEF. SSUF no. 27-28.)  Based on Ofc. Lewis's observations, he had reasonable cause to believe that Wood failed to disperse, and remained present in the area where an unlawful assembly had been declared and multiple audible orders to disperse had been given.  (DEF. SSUF no. 29.)  There was nothing unlawful about seizing Wood at the 51st Street bridge nor was there anything unlawful about arresting her for violating Penal Code section 409.

### 2. <u>Unlawful Arrest Claim</u>

Generally, "an arrest must be supported by probable cause to believe that the arrestee has committed a crime." (*Allen v. City of Portland*, 73 F.3d 232, 236 (9th Cir. 1995), as amended (Jan. 17, 1996) [citing *Henry v. United States*, 361 U.S. 98, 102 (1959)].) A police officer has probable cause if "the facts and circumstances within [his] knowledge are sufficient to warrant a prudent person to believe that a suspect has committed, is committing, or is about to commit a crime." (*MacKinney v. Nielsen*, 69 F.3d 1002, 1005 (9th Cir. 1995) [internal quotation

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

marks omitted].) The Court must determine (1) when the arrest occurred, and (2) whether probable cause existed at that time. *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001) (police officers need probable cause to make warrantless arrests) "There is probable cause for a warrantless arrest and a search incident to that arrest if, under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010) (quoting *United States v. Gonzales*, 749 F.2d 1329, 1337 (9th Cir. 1984)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "[L]iability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999) (citation omitted).

Under California Penal Code section 409, "[e]very person remaining present at the place of any riot, rout, or unlawful assembly, after the same has been lawfully warned to disperse, expect public officers and persons assisting them in attempting to disperse the same, is guilty of a misdemeanor."

As an initial matter, Ofc. Antonetti is the only defendant under Wood's Second Cause of Action for Fourth Amendment – Unlawful Detention/Arrest under 42 U.S.C. Section 1983. However, Ofc. Antonetti did not arrest Wood (or anyone else) on March 4, 2019. (DEF. SSUF no. 25.) Wood was arrested by Ofc. Lewis at

26

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

approximately 10:20 p.m. (DEF. SSUF no. 224.)   Ofc. Antonetti

cannot be held liable under this cause of action because she had

no personal involvement in arresting Wood on March 4, 2019.

*Barren*, 152 F.3d at 1194.

Prior to Wood's arrest by Ofc. Lewis, the dispersal orders

were being announced with a loudspeaker. (Ex. B.)   The dispersal

orders stated that the crowd should disperse.   (Ex. B.)   The

announcements were loud and obviously audible to the crowd.   (Ex.

B.)   Wood's Separate Statement of Undisputed Facts recites the

following announcement:

> "I am Officer Beal. A police officer with the
> Sacramento Police Department. Due to the act of
> vandalism and criminal activity associated with this
> march. I hereby declare this to be an unlawful assembly
> and in the name of the people of the State of California
> order all those assembled at 50th St and Folsom to
> disperse immediately. If you do not disperse, you may
> be arrested or subject to other lethal or less lethal
> munitions, chemical agents or electrical devices.
> Those who remain risk serious injury."

> (Wood's Separate Statement of Undisputed Facts ("WOOD
> SSUF") at no. 7).

Despite hearing these dispersal orders, Wood chose to stay

at the protest.   Moreover, Wood was given instructions on how to

leave the protest at 9:16 p.m. by an SPD bike officer while she

was still at the Trader Joe's parking lot.   (DEF. SSUF no. 8.)

Announcements of this order and the fact that the assembly

was unlawful, were given loudly to the crowd beginning at

9:09 p.m. to 9:40 p.m. (WOOD SSUF no. 6.)   Once the protest was

deemed to be unlawful, and announcements were made of that fact,

there was probable cause for police officers to arrest those,

including Wood, that remained in the area pursuant to Penal Code

27

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

section 409, which makes it a misdemeanor crime for failing to disperse and remain present in an area, once an unlawful assembly is declared.  (DEF. SSUF nos. 27-29.)

Wood was arrested at approximately 10:20 p.m., which was after multiple dispersal orders were given.  Ofc. Lewis, alone, arrested Wood on March 4, 2019 while she was on the 51st Street bridge.  (DEF. SSUF no. 26.)  Ofc. Lewis had probable cause to arrest Wood on March 4, 2019 based on his observations and belief that Wood had committed a public offense in his presence.  (DEF. SSUF no. 27.) Here, there was more than a mere "fair possibility" that at the time of Wood's arrest, she had committed the crime of failing to disperse after dispersal orders were given. *Struckman*, 603 F.3d at 739.  Admittedly, violation of Penal Code section 409 is a minor criminal offense, nonetheless, if an officer has probable cause to arrest an individual, they may, without violating the Fourth Amendment.  *Atwater*, 532 U.S. at 354.  This is precisely what occurred here.  Ofc. Lewis arrested Wood on March 4, 2019 for violation of Penal Code section 409 – a misdemeanor crime for failing to disperse and remain present in an area, once an unlawful assembly is declared.  (DEF. SSUF no. 28.)  Based on Ofc. Lewis's observations, he had reasonable cause to believe that Wood failed to disperse, and remained present in the area where an unlawful assembly had been declared and multiple audible orders to disperse had been given.  (DEF. SSUF no. 29.)  Therefore, Wood's arrest, by any officer, was lawful and did not violate Wood's constitutional rights.  Wood conveniently ignores this critical fact in her moving papers.

///

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

1    In none of Wood's four claims for which she seeks summary
2    adjudication has she met her initial burden of production or the
3    ultimate burden of persuading the court that there is no genuine
4    dispute as to any material fact.   Additionally, her legal
5    analysis utterly fails to address each of the essential elements
6    for each of her four claims for which she seeks summary
7    adjudication.   This alone is reason enough to deny Wood's Motion
8    for Partial Summary Adjudication.

9    **C.**   **<u>Defendants Have Created A Genuine Dispute Of Material Fact</u>**

10   Only two of Wood's fifty-eight (58) "material facts" are
11   incorporated into her legal analysis.   By her own account, none
12   of the remaining fifty-six (56) facts found in her Statement of
13   Facts or Separate Statement of Undisputed Facts were material
14   enough to be included into her legal analysis.   The reality is
15   that these fifty-six facts are immaterial and have no bearing on
16   any of the four claims for which Wood is seeking summary
17   adjudication.

18   "To be material, the fact must be one that bears on the
19   outcome of the case."   *McFarland v. App Pharm., LLC*, No. C10-
20   1746RSL, 2012 U.S. Dist. LEXIS 14784, at *4 (W.D. Wash. Feb. 7,
21   2012) "As to materiality, the substantive law will identify which
22   facts are material. Only disputes over facts that might affect
23   the outcome of the suit under the governing law will properly
24   preclude the entry of summary judgment. Factual disputes that
25   are irrelevant or unnecessary will not be counted." *Anderson v.*
26   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

27   Wood's fist sentence under her legal analysis section for
28   her "DEFENDANT ANTONETTI ENFORCED AN UNREASONABLE SEIZURE"

29
Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

section includes a material fact with evidentiary support. The sentence reads as follows, "Here, both officers' training and the dispersal orders given were to explicitly disperse protestors from 50th St/Folsom and be arrested if they remained at the intersection." This material fact appears to match up with Wood's material fact number 6 under her Separate Statement of Undisputed Fact. However, a genuine dispute of material fact exists as to this proffered fact because SPD officers were still allowing protestors to leave while they were near the general area of the Trader Joe's, which is located at or very near the intersection of 50th Street and Folsom Blvd. Groups of protestors were able to leave through Folsom Blvd. (DEF. SSUF no. 2.) There were avenues for people to leave the area. (DEF. SSUF no. 3.) At approximately 9:15 p.m., seconds after a dispersal order was given, which was audible and clear, at the parking lot of the Trader Joe's, Wood approached an officer to ask which route to take to leave the protest. (DEF. SSUF no. 7.) At approximately 9:16 p.m., Wood is told by a police officer that she can leave by taking an alley adjacent to the Trader Joe's. (DEF. SSUF no. 8.) There is a genuine dispute of fact as to this specific material fact.

The second material fact that Wood relies on is also found under the "DEFENDANT ANTONETTI ENFORCED AN UNREASONABLE SEIZURE" section and states the following, "Notably SPD provided training that protestors cannot be arrested for trying to comply with a dispersal order." (ECF No. 57 at p. 12: lines 2-3.) This material fact is irrelevant to the Wood's unlawful/unreasonable seizure claim because there was probable cause to seize and

30

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

arrest her.  Wood was not simply a bystander that got caught walking with the crowd of protestors.  No, Wood had been a participant of the protest as the crowd moved through the neighborhood. (WOOD'S SSUF no. 31.)  She admitted to hearing the dispersal orders while at the Trader Joe's instructing the protestors to disperse. (WOOD'S SSUF no. 31-32.)  Despite hearing the dispersal orders, Wood elected to stay.

As stated above, police officers must have "specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States*, 208 F.3d at 1129.  Ofc. Lewis did not arrest Wood because she was complying with the dispersal order. Rather, Wood was arrested for violating Penal code section 409 – a misdemeanor crime for failing to disperse and remain present in an area, once an unlawful assembly has been declared.  (DEF. SSUF no. 28.)

Nonetheless, this fact is disputed because protestors were not arrested because they were complying or trying to comply with the dispersal orders.  Deputy Chief Leong expressly testified that the group of people had been given multiple dispersal orders and opportunities to leave. And in fact, some people did leave but some chose not to leave. Moreover, the body worn camera footage from Ofc. Giusti and Ofc. Antonetti shows protestors being allowed to leave the Trader Joe's parking lot which is located near 50th Street and Folsom Blvd.

Moreover, to qualify as a material fact, this fact needs to have some bearing on the outcome of the case.  The fact that Ofc. Lewis had probable cause to seize and arrest Wood obviates the

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

1  inference that Wood is making that she was arrested while trying

2  to comply with the dispersal orders. The fact that SPD trains is

3  officers not to arrest those trying to comply with dispersal

4  orders does not affect the outcome of this claim.

5      None of the remaining fifty-six (56) facts included in

6  Wood's Statement of Facts or Separate Statement of Undisputed

7  Facts qualify as "material facts."  First off, none of these

8  facts were worthy of being mentioned in Wood's legal analysis

9  because, presumably, they were unnecessary and irrelevant to her

10 claims.  In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court

11 was unambiguous when it stated that "[f]actual disputes that are

12 irrelevant or unnecessary will not be counted."  *Anderson*, 477

13 U.S. at 248.  "[T]he substantive law will identify which facts

14 are material." *Id*. Of these remaining fifty-six "material facts",

15 many of them simply cite to deposition testimony without ever

16 articulating what portion of the testimony applies to what claim.

17 This is indicative that these fifty-six (56) facts are immaterial

18 and unnecessary.

19     A glossary review of these "material facts" will also reveal

20 that they are argumentative, include multiple assertions that do

21 not pinpoint what evidence supports which assertion, and they

22 lack specificity as to the supporting evidence.  (See generally

23 ECF No. 57.11.)

24     For the aforementioned reasons, the Court must find the

25 existence of a genuine dispute of material fact, thus, it should

26 deny Wood's Motion for Partial Summary Adjudication in its

27 entirety.

28 ///

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

D.   **Wood's Motion For Partial Summary Adjudication Is Devoid Of Specificity**

Rule 56(a) requires the moving party to identify each claim on which summary judgment is sought.  Fed. R. Civ. P. 56.  Once the contours of the summary judgment contest are set, parties move for, or existing, summary judgment have the further burden to factually support their positions.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-412 (2013).  The moving party may cite to certain parts of the summary judgment record.  *Id.*  In doing so, the citations must be specific as to evidence of its specific facts.  *Id.*

Lack of specificity is a recurring theme in Wood's Motion for Partial Summary Adjudication.  In Page 1 of her Memorandum of Points and Authorities she vaguely identifies the following claims for which she is seeking a partial summary adjudication on: "the liability portion of the Fourth Amendment unlawful seizures and excessive force claims and correspondent state claims pursuant to Federal Rules of Civil Procedure, Rule 56." (ECF No. 57 at p. 1: lines 23-25.)

Then in her legal analysis section she includes the following three headings, (1) Defendant Antonetti Seized Plaintiff; (2) Defendant Antonetti Enforced an Unreasonable Seizure; and (3) Defendant Antonetti Was Negligent. (ECF No. 57 at p. 9: line 16 – p. 13: 22.)

Then in her conclusion, Wood identifies the four claims that she seeks summary adjudication on, which are: (1) Defendant Antonetti Seized Plaintiff in the Trader Joe's Parking Lot; (2) Defendant Antonetti Seized Plaintiff without probable cause of

33

Defendants City of Sacramento and Leah Antonetti's        Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

[sic] the bridge after 51st Street; (3) Defendant Antonetti used Excessive force with her bike when she struck Plaintiff and/or kept the crowd from dispersing; (4) Plaintiff proved the liability portion of her Fourth Amendment and negligence claim. This was not done in a clear and concise way.

The first page, which Wood proports to be the Notice of her Motion for Summary Adjudication, omits any mention of the negligence claim.  Wood only identifies two claims by name, the unlawful seizures and excessive force claims that are made under the Fourth Amendment.  (ECF No. 57 at p. 1: lines 23-25.)  In her legal analysis section, she omits any statutory or case authority related to excessive force claims under the Fourth Amendment.  (ECF No. 57 at p. 9: line 16 – p. 13: 22.)

In that same vein, Wood's Statement of Facts fails to pair her facts to her Separate Statement of Undisputed Facts.  It appears as if Wood is relying on the Court to connect the dots between the proffered facts found in the Statement of Facts with those in Wood's Separate Statement of Undisputed Facts.  This is not the Court's role.  It was Wood's responsibility to cite to specific evidence to support her specific facts. *Clapper*, 568 U.S. at 411-412.

This is yet another example as to why Wood has not met her initial burden pursuant to Rule 56(a), and why this motion should be denied in its entirety.

**V.**

**CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court deny Wood's Motion for Partial Summary Adjudication on

34

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

liability for her claims for unlawful seizure, unreasonable seizure/arrest, excessive force, and negligence. More specifically, Defendants request the following orders:

That the Court DENY Wood's Motion for Summary Adjudication in its entirety; or,

- That the Court DENY Wood's Motion for Summary Adjudication on liability for Wood's First Cause of Action for Fourth Amendment – Excessive Force under 42 U.S.C. Section 1983 against Ofc. Antonetti based on the existence of a genuine dispute of material fact pursuant to Fed. R. Civ. P. 56

- That the Court DENY Wood's Motion for Summary Adjudication on liability for Wood's Second Cause of Action for Fourth Amendment – Unlawful Detention/Arrest under 42 U.S.C. Section 1983 against Ofc. Antonetti based on the existence of a genuine dispute of material fact pursuant to Fed. R. Civ. P. 56. According to Wood's moving papers, this claim is in relation to the alleged unlawful seizure at the Trader Joe's

- That the Court DENY Wood's Motion for Summary Adjudication on liability for Wood's Second Cause of Action for Fourth Amendment – Unlawful Detention/Arrest under 42 U.S.C. Section 1983 against Ofc. Antonetti based on the existence of a genuine dispute of material fact pursuant to Fed. R. Civ. P. 56. According to Wood's moving papers, this claim is in relation to the alleged unreasonable seizure at the 51st Street bridge

///

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication

1    • That the Court DENY Wood's Motion for Summary

2    Adjudication on liability for Wood's Eighth Cause of

3    Action for Negligence against Ofc. Antonetti and the City

4    of Sacramento based on the existence of a genuine dispute

5    of material fact pursuant to Fed. R. Civ. P. 56

6

7  Dated: December 14, 2022          Dean Gazzo Roistacher LLP

8

9                                By: */s/ Ricardo Baca*

10                                   Mitchell D. Dean
                                     Ricardo Baca
11                                   Attorneys for Defendants
                                     City of Sacramento and Leah
12                                   Antonetti
                                     E-mail: mdean@deangazzo.com;
13                                   rbaca@deangazzo.com

Defendants City of Sacramento and Leah Antonetti's          Case No.: 2:20-cv-00497-WBS-DB
Opposition to Plaintiff's Motion for Partial
Summary Adjudication