**ADANTÉ D.  POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Suite 208
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LAWYERSFTP.COM
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com


Attorneys for Plaintiffs

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BRANDY WOOD, | Case No.: 2:20-cv-00497-WBS-DB |
| Plaintiffs, |  |
| CITY OF SACRAMENTO, et al., | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT** |
| Defendants. | HON. WILLIAM B. SHUBB |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- i -

## <u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION……………………………………………………………1

II.     SUPPLEMENTAL FACTS THAT PRECLUDE SUMMARY JUDGMENT………2

III.    LEGAL ANALYSIS…………………………………………………………**2**

        A.  SUMMARY JUDGMENT GENERALLY IMPROPER FOR POLICE ABUSE
            CASES……………………………………………………………………**2**

        B.  PLAINTIFF'S UNLAWFUL SEIZURE CLAIM MUST PROCEED………….**3**

        C.  PLAINTIFF'S EXCESSIVE FORCE CLAIM MUST PROCEED……………**11**

        D.  PLAINTIFF'S RETALIATORY ARREST CLAIM MUST PROCEED………**16**

        E.  QUALIFIED IMMUNITY'S PROPER STANDARD……………………………**16**

        F.  PLAINTIFF'S BANE ACT CLAIM MUST PROCEED………………………**20**

        G.  PLAINTIFF'S BATTERY CLAIM MUST PROCEED………………………..**22**

        H.  PLAINTIFF'S FALSE ARREST/IMPRISONMENT CLAIM
            MUST PROCEED…………………………………………………………**22**

IV.     CONCLUSION…………………………………………………………..**23**

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- ii -

# TABLE OF AUTHORITIES

**State Cases**

*Cervantez v. J.C. Penney Co.*, (1979) 24 Cal.3d 579, 592 .................................................. 22

*Cornell v. CCSF,* 17 Cal.App.5th 766 (Ct. App. 2017) ........................................................ 21

*Cox v. Griffin*, (2019) 34 Cal.App.5th 440, 446, fn. 6 ......................................................... 22

*In re Brown*, 9 Cal.3d 612, 623 (Cal.1973) ......................................................................... 10

*In re Wagner*, 119 Cal.App.3d 90, 103 (1981) .................................................................... 10

*People v. Anderson*, 1 P.2d 64, 117 Cal.App.((1931) .......................................................... 9

*People v. Bower*, 24 Cal.3d 638, 649 (Cal. 1979) ............................................................... 13

*People v. Cipriani*, 18 Cal.App.3d 299 (1971) ..................................................................... 9

*People v. Lashley* (1991) 1 Cal.App.4th 938 ....................................................................... 21

*Venegas v. County of Los Angeles* (2007) 153 Cal. App. 4th 1230 ...................................... 21

**Statutes**

Fed.R.Civ.P. 56(a) ................................................................................................................. 2

**Federal Cases**

*Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ......................................................... 17, 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) .................................................. 2

*Barham v. Ramsey,* 434 F.3d 565, 575 (D.C. 2006) ................................................... 1, 19, 20

*Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) .......................................................... 4

*Beck v. Ohio*, 379 U.S. 89, 91 (1964) ................................................................................... 7

*Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988)................................................. 7

*Boyd v. City of Hermosa Beach*, No. CV0410528AGJTLX, 2007 WL 9717629, at *6 (C.D. Cal. Sept. 11, 2007) . 14

*Brendlin v. Cal.,* 551 U.S. 249, 254 (2007) .......................................................................... 5

*Brower v. Cty. of Inyo*, 489 U.S. 593, 595 (1989) ................................................................. 3

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- iii -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010)................................................................12

*Call v. Badgley*, 254 F.Supp.3d 1051, 1065-66 (N.D. Cal. May 19, 2017) ............................15

*Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) ......................................................................17

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ...........................................................3

*Community House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010)...........................17

*Crowe v. County of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010)............................................7

*Dubner v. City and County of San Francisco*, 266 F.3d 959 (9th Cir. 2001) ................1, 10, 20

*Economus v. City and County of San Francisco*, 2019 WL 1483804...........................................7

*Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528 (9th Cir. 2010) ...............................................12

*Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir.1994) .....................................................12

*Gasho v. United States*, 39 F.3d 1420, 1432 (9th Cir. 1994) ......................................................8

*George v. City of Long Beach*, 973 F.2d 706 (9th Cir. 1992) ...................................................22

*George v. Morris,* 736 F.3d 829 (9th Cir. 2013).......................................................................12

*Glenn v. Washington Cnty.*, 673 F.3d 864 (9th Cir. 2011) .......................................................11

Graham v. Connor, 490 U.S. 386, 397 (1989) ..........................................................................11

*Hartman v. Moore*, 547 U.S. 250, 256 (2006) ..........................................................................16

Headwaters Forest Def. v. Cnty. of Humboldt ("Headwaters II"), 276 F.3d 1125, 1130 (9th Cir.2002) ................14

*Hope v. Pelzer*, 536 U.S. 730 (2002) ........................................................................................18

in *Duran v. City of Douglas*, 904 F.2d 1372 (9th Cir,. 1990) .......................................13, 16, 20

*Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1059– 60 (9th Cir. 2006) .................................17

*Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) ...................................................7

*Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 (9th Cir.1997) ................................................14

*Mackinney v. Nielsen*, 69 F.3d 1002, 1006 (1995) ...................................................................13

*Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)......................16

*Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) ...........................................................17

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- iv -

*Miller v. Clark Cnty.*, 340 F.3d 959 (9th Cir. 2003) ................................................................ 12

*Mitchell v. Forsyth*, 472 U.S. 511, 535, n. 12 (1985) .............................................................. 18

*Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) ............................................................ 5

*Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) ............................................................ 6

*Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010) ...................................... 22

*Nelson v. City of Hayward*, Case No: 3:16-cv-07222-SK .......................................................... 3

*Onyenwe v. City of Corona*, 2103 WL 12169375 (C.D. Cal. Dec. 1, 2013) ............................... 15

*Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) ............................................................... 17

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ................................................................... 16

*Reese v. County of Sacramento*, (9th Cir. 2018) 888 F.3d 1030 .............................................. 22

*Rutherford v. City of Berkeley,* 780 F.2d 1444, 1448 (9th Cir. 1986) ...................................... 15

*San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 492 F.3d 962 (9th Cir. 2005) .................... 18

*Segal v. Los Angeles County*, 852 F.2d 1290 (9th Cir. 1988) .................................................. 15

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) .............................................................. 3

*Sorrels v. McKee*, 290 F.3d 965, 971–72 (9th Cir. 2002) ........................................................ 17

Tennessee v. Garner, 471 U.S. 1 (1985) ................................................................................. 11

*Torres v. City of Los Angeles*, 548 F.3d 1197, 1206-07 (9th Cir. 2008) ................................... 8

*U.S. v. Edwards*, 761 F.3d 977, 982 (9th Cir. 2014) ............................................................... 5

*U.S. v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) ............................................ 5

*United States v. Chamberlin*, 644 F.2d 1262, 1267 (9th Cir.1980) .......................................... 5

*United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) .................................................. 7

*United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005) ..................................... 9

*United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986) ...................................................... 7

*United States v. Sokolow*, 490 U.S. 1, 7 (1989) ..................................................................... 5

*Washington Mobilization Committee v. Cullinane*, 566 F.2d 107 (D.C.Cir.1977) .................. 19, 20

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- v -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel. (510) 929 - 5400

*Washington v. Lambert*, 98 F.3d 1181 (9th Cir. 1996) ................................................................5

*Ybarra v. Illinois*, 444 U.S. 85 (1979) ..............................................................................19, 20

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- vi -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

## I.    **INTRODUCTION**

Defendants' motion largely relies on ignoring relevant case law around indiscriminate arrests of protestors, declaring an unlawful assembly of a *peaceful protest* with no incident of violence against state and federal law and arresting protestors that are complying with dispersal orders. *See Dubner v. City and County of San Francisco*, 266 F.3d 959 (9th Cir. 2001) (holding Cal Penal §409 declaring an unlawful assembly cannot be invoked unless there is "a clear and present danger of imminent violence").

To cap it, Defendants refused to conduct their analysis under the proper Rule 56 standard that mandates all facts and reasonable inferences are construed in Plaintiff's favor which suggest the following fact statement: Defendant Antonetti struck a peaceful protestor with her bicycle, fractured her ankle, in order to prevent her from dispersing in compliance with officers' instructions and without probable cause to arrest her under California Penal Code §409. By her own admission Defendant Antonetti herself stated: "I did not discern who was who and who wanted to leave because at that moment, everybody was going to be arrested." (Antonetti Depo, 104:21-105:9); *see Barham v. Ramsey,* 434 F.3d 565, 575 (D.C. 2006) (denying qualified immunity in arrest of undifferentiated park protestors explaining only "when compelling circumstances are present, the police may be justified in detaining an undifferentiated crowd of protestors, **but only after providing a lawful order to disperse followed by a reasonable opportunity to comply with that order.**")

For these reasons and those elaborate below, the Court should DENY Defendants' Motion for Summary Judgment.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 1 -

## II.   SUPPLEMENTAL FACTS THAT PRECLUDE SUMMARY JUDGMENT[1]

For purposes of Cal. Penal Code 409, Defendants do not claim that this was a riot or rout but rather an "unlawful assembly." (**Ex 1.,** Deposition of Norm Leong "Leong Depo", 61).

Defendant City's FRCP Rule 30 (b)(6) Person Most Knowledgeable on Defendant Antonetti's training at the time of the incident testified that she was trained she needed probable cause to make an arrest. (**Ex. 2 – Deposition of Brent Kaneyuki "Kaneyuki Depo", 20).** Furthermore, Defendant Antonetti was trained that she should not follow an unlawful arrest order from a supervisor (i.e. an order to make an arrest without probable cause. (Kaneyuki Depo, 22).

### III.   LEGAL ANALYSIS

### A.  SUMMARY JUDGMENT GENERALLY IMPROPER FOR POLICE ABUSE CASES

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy

---

[1] Plaintiff submitted her own Rule 56 Motion for Partial Summary Adjudication with a Statement of Facts & Evidence. Plaintiff does endorse that evidence for purposes of Her Opposition but will not duplicate those facts here since they are already in the record; rather, Plaintiff will provide only supplemental facts that support the evidentiary record of material fact disputes. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) (in-cross motions under Rule 56 the Court "must consider each party's evidence, regardless under which motion the evidence is offered.")

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 2 -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)

Furthermore, "summary judgment is **almost never appropriate** on an **excessive force claim**" and must be "granted sparingly" "[b]ecause [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." *Nelson v. City of Hayward*, Case No: 3:16-cv-07222-SK, at Doc. 92, p. 9 (N.D. Cal. March 1, 2019) [emphasis added] quoting *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)

**B.  PLAINTIFF'S UNLAWFUL SEIZURE CLAIM MUST PROCEED**

   **1.  Seizure Took Place When Defendant Antonetti Prevented Protestors from Leaving**

Under the Fourth Amendment, a seizure occurs "[w]henever an officer restrains the freedom of a person to walk away." *Brower v. Cty. of Inyo*, 489 U.S. 593, 595 (1989) (citation and quotations omitted). Violation of the Fourth Amendment requires an "intentional acquisition of physical control." *Id*. at 596. A seizure may occur even if the person ultimately restrained in his freedom was not the original target of the "detention or taking," so long as the acquisition of physical control itself is intentional. *Id*. The Supreme Court has held that:

> It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

*Id*. at 597 (emphasis in original).

Here Defendant Antonetti testified that herself that refused to allow Ms. Wood and other leave – despite not making any efforts to distinguish those who had violated the dispersal order, those who were complying with it and innocent passersby – because "everybody was going to be arrested. (Declaration of Patrick Buelna, **Ex. 3** – Deposition of Leah Antonetti, 104:21-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 3 -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

105:5). So she used the force of her bicycle to prevent them from leaving, this included Plaintiff Wood. (Antonetti, 101:3-103:9; 109:5-9).  Defendant Antonetti admitted that in review of her body-worn camera footage that Plaintiff explicitly told her that she had tripped her and injured her foot with the bike; and that Plaintiff identified her as the person that did it. (Wood Depo, 101:3-103:9)

Not only did Defendant Antonetti agree that Ms. Wood was under arrest, but she individually used the force of her bike to prevent her from leaving the arrest. In fact, Defendants concede that the seizure and arrest occurred at the bridge. (Def Mtn, at p. 32). Defendants merely argue that Defendant Antonetti did not arrest Ms. Wood, because she did not formally place in her handcuffs and charge her like Ofc. Lewis had. (Def Mtn, p. 34) Defendants cited an inapposite case – *Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) – for support.

In *Barren*, a plaintiff had merely alleged conclusory allegations that an officer "had conspired to deny him his Fourth Amendment rights by bringing charges against him without probable cause, thus causing him to be incarcerated for 156 days before the charges were dismissed." *Barren*, supra at 1194. That is it, nothing further. So the district and appellate court held that plaintiff needed to have alleged facts to show the personal involvement of the officers' conduct in the arrest. (Id.) The plaintiff's case in *Barren* is worlds away from Plaintiff's case where Plaintiff has alleged and placed into the record substantial body worn camera footage, witness testimony and the parties' testimony - both from Plaintiff and Defendant Antonetti - describing and identifying her use of bicycle.

Furthermore, the formal handcuffing of a person is not determinative of whether an officer arrested/seized a person under the Fourth Amendment. As described above, the seizure takes place for the purposes of the Fourth Amendment whenever an officer uses *means intentionally*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 4 -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel.: (510) 929 - 5400

*applied* to terminate the freedom of a person's movement. By Defendant Antonetti's own admission she had used her physical presence and bicycle to prevent Plaintiff from leaving in order to effect an arrest. *See Brendlin v. Cal.,* 551 U.S. 249, 254 (2007) (emphasis added) ("A person is seized by the police ... when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement.").

## 2. Defendant Antonetti's Seizure Was an Arrest

There are generally two types of seizures: detentions and arrests.

**For Detention,** "[t]he Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *U.S. v. Edwards*, 761 F.3d 977, 982 (9th Cir. 2014) (quoting *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014)). "In order to satisfy the Fourth Amendment's strictures, an investigatory stop by the police may be made only if the officer in question has 'a reasonable suspicion supported by articulable facts that criminal activity may be afoot[.]'" *U.S. v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

**For arrest,** the courts have no "bright-line rule" in determining if a detention has turned into an arrest but look at the intrusiveness of the stop. *See Washington v. Lambert*, 98 F.3d 1181 (9th Cir. 1996). However, the courts do consider it an important factor if the "police physically restrict the suspect's liberty". *Washington,* supra at 1188; *see also, Del Vizo v. ,* 918 F.2d 821, 825 (1990) (removing suspect from his car and making him lie down in the street was a factor in whether an arrest had occurred); *United States v. Chamberlin*, 644 F.2d 1262, 1267 (9th Cir.1980) (holding suspect in police car and questioning him for twenty minutes constituted an arrest), cert. denied, 453 U.S. 914 (1981).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 5 -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

Here it is unclear to Plaintiff how Defendants can argue that Defendant Antonetti had not and did not participate in the arrest. Defendant Antonetti explained that she did not permit Plaintiff or anyone else to leave because she considered everyone to under arrest and refused to make any effort – and no officer after her did either – to determine if any one in the group was innocent (i.e. the investigatory stop was over); therefore, Plaintiff and every other person on the group was arrested:

"Q: It's okay.

Why wasn't there any effort made by you or your fellow officers to distinguish the groups of people that were apparently trying to leave from those that were not?

A: I did not discern who was who and who wanted to leave because at that moment, everybody was going to be arrested.

Q: Regardless if there were in --- apparently following instructions from officers on how to leave.

A: Yes." (Antonetti Depo, 104:21-105:9).

Furthermore – while she did not formally handcuff Plaintiff – Defendant Antonetti struck Plaintiff with her bike (Antonetti BWC at 03:07:20 – 03:07:40) and personally held Plaintiff at the location for 15 minutes while other officers organized themselves to systematically handcuff and process each person. (03:20:19). Therefore, not only did Defendant Antonetti participate in the arrest she enforced it with the physical use of her bicycle. Despite her contention that she did not push back with her bicycle or mean to strike Plaintiff, she did intend to use the bicycle as a means of terminating the movement of protesters and her subject intention are irrelevant. *See Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) (indicating that, even if officers did not intend to hit students with pepperball projectiles and instead simply

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 6 -

intended "to subject the students to a shower of pepper spray via area contamination," the officers still "intentionally directed their use of force at the students"; adding that "[w]hether the officers intended to encourage the partygoers to disperse is of no importance when determining whether a seizure occurred"); *see Economus v. City and County of San Francisco*, 2019 WL 1483804 (finding an officer's decision to step into the path of a a skateboarder going downhill during a skate contest without city permit and struck him with his shoulder was an unlawful seizure for purposes of the Fourth Amendment even though the skateboarder was never arrested was permitted to leave and the officer claimed it was an accident).

### 3. Defendant Antonetti's Arrest Lacked Probable Cause

Arrests require probable cause. "'An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (quoting *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988)). "Probable cause exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Alternatively, this court has defined probable cause as follows: when 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.'" Id. (citing *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)) (alteration in original); see also *Crowe v. County of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010) ("In determining whether there was probable cause to arrest, we look to the totality of circumstances known to the arresting officers, to determine if a prudent person would have concluded there was a fair probability that the defendant had committed a crime.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 7 -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

"'While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, [m]ere suspicion, common rumor, or even strong reason to suspect are not enough.'" *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206-07 (9th Cir. 2008) (quoting *Lopez*, 482 F.3d at 1072). "Probable cause is lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities." *Gasho v. United States*, 39 F.3d 1420, 1432 (9th Cir. 1994) (citations omitted).

Here, Defendant Antonetti sole purported basis to seize and use her bike to strike Plaintiff was the belief that Plaintiff had violated the dispersal order in front of the Trader Joe's at 50th/Folsom. However, it remains uncontested – even in Defendants' motion – that the dispersal orders instructed protestors to leave from 50th St and Folsom which was captured on Ofc. Antonetti's body-worn camera just a half hour before she seized Plaintiff 2-3 blocks away on 51st St. (Antonetti BWC at 2:24:30-2:25:10). She admitted that she made no efforts to distinguish those that had walked down 51st – like Plaintiff – in compliance to go home.

Now Defendants may argue that anyone walking down 51st St was in violation of dispersal order but *nothing* in the record suggests that protestors were informed that they would be in violation of the dispersal order if they *dispersed down 51st Street.*

To the contrary, multiple protestors, including the group with Plaintiff, told Defendant Antonetti that other officers had instructed them to go this way. (Antonetti BWC at 3:06:40-3:08:00). Moreover, Plaintiff recalled officers had actually pushed the protestors onto 51st Street, blocking their exits while contradictorily instructing them to disperse. (Wood Depo, 83-84). "Although 'police may rely on the totality of facts available to them in establishing probable cause, **they also may not disregard facts tending to dissipate probable cause**.'" *Crowe*, 608 F.3d at 433 (quoting *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir.

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

2005)). It was obvious at this point that Plaintiff and other protestors and clergy that were actually complying with the dispersal orders had been grouped in with violators and prevented from leaving dissipating any probable cause that Defendant Antonetti could have to enforce an arrest. Taking all the abundance of facts in Plaintiff's favor, including that Defendant Antonetti at this point should have reasonably know that non-violating, peaceful protestors had grouped in with others vitiated the probable cause and an investigation need to be conducted prior to arrest.

### 4.   Cal. Penal Code Section 409 Cannot Supply Probable Cause

Defendants' **sole basis for arrest** was that Plaintiff and protestors violated Cal. Penal Code § 409 which states "[e]very person remaining present at the place of any riot, rout, or unlawful assembly, after the same has been lawfully warned to disperse, except public officers and persons assisting them in attempting to disperse the same, is guilty of a misdemeanor."

However, Defendants do not claim that this was a riot or rout but rather an "unlawful assembly." (**Ex 1.,** Deposition of Norm Leong "Leong Depo", 61).

An unlawful assembly occurs "[w]henever two or more persons assemble together to do an unlawful act, or do a lawful act in a violent, boisterous, or tumultuous manner." Cal.Penal Code § 407.

In order to be considered an unlawful assembly, the protestors must have exhibit real acts of violence. *See People v. Cipriani*, 18 Cal.App.3d 299 (1971) (upholding conviction for failure to disperse from an anti-war demonstration, during a state of emergency, where rocks were thrown at National Guardsmen); *People v. Anderson*, 1 P.2d 64, 117 Cal.App.(Supp.) 763 (1931); *People v. Sklar*, 292 P. 1068, 111 Cal.App. (Supp.) 776 (1930).

As the *Cipriani* court explained, "[t]he plain objective of section 409 is to enable law enforcement officers to de-fuse riotous situations by ordering persons to remove themselves

POINTER & BUENA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

from the area without any need to distinguish between the rioters and bystanders whose very presence aggravates the problem of restoring tranquility." 18 Cal.App.3d at 309. California courts have since interpreted the statute to require a clear and present danger of imminent violence before bystanders can be arrested along with participants in an unlawful assembly. *See In re Brown*, 9 Cal.3d 612, 623 (Cal.1973) (narrowing scope of section 409 to assemblies "which are violent or which pose a clear and present danger of imminent violence."); *In re Wagner*, 119 Cal.App.3d 90, 103 (1981). See also, Witkin & Epstein, California Criminal Law §§ 888–93 (1988).

Absent these compelling circumstances, the Ninth Circuit in *Dubner v. City and County of San Francisco*, 266 F.3d 959 (9th Cir. 2001) held "**the police are at least required to differentiate between the participants and innocent bystanders**." (Id. at 968) (emphasis added).

For example, in *Dubner*, a photographer attended a protest with an animal rights group that was protesting in front of the Moscone Center in San Francisco where a private convention of surgeons was being held. *Dubner*, at 962. At first protestors stayed on the pedestrian sidewalk but then started to try to enter the building and were refused by law enforcement officers who called for back up. (Id.) Since portions of the property were private, the owner signed a document to provide SFPD the legal right to arrest trespassers. *Dubner*, 962-963. Afterwards, officers provided dispersal orders but the photographer had briefly went inside the convention center then was arrested. (Id.) Although Defendants argued that the protestors were trying to force their way into the convention center at various times, the Ninth Circuit found that "this protest did not involve a sufficient threat of violence to justify arresting nonparticipants under section 409."

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

Similarly here, Defendant Antonetti and others admitted to making no effort to "discern who was who and who wanted to leave because at that moment, everybody was going to be arrested." (Antonetti Depo, 105:3-5). However, there was no violence or acts that posed "a clear and present danger of imminent violence" in front of the Trader Joe's. Even the acts of alleged vandalism to cars had occurred hours prior to the arrest and dispersal orders given at Trader Joe's. None of the Defendants witnessed or produced any evidence of imminent violence. Furthermore, at each of the intersections where protestors were told to disperse they promptly did disperse and were not arrested. None of them were instructed that continuing to walk down 51st would result in their arrest. As such the "the protest did not involve a sufficient threat of violence" to invoke California Penal Code Section 409, justify probable cause and indiscriminately arrest people walking on 51st Street.

For the aforementioned reasons, Plaintiff's unlawful seizure claim MUST PROCEED.

## C.  PLAINTIFF'S EXCESSIVE FORCE CLAIM MUST PROCEED

In evaluating a Fourth Amendment claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor,* 490 U.S. 386, 397 (1989). This inquiry "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)).  The Ninth Circuit applies a three-step process to determine reasonableness in use-of-force cases.  *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011).

First, the court must "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" Id. (quoting

POINTER & BUENA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

*Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010)). Second, the court must evaluate the government's interest in the use of force under the totality of the circumstances. *Glenn, supra*, 673 F.3d at 871 (citing *Graham*, 490 U.S. at 396). Third, the court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Glenn*, 673 F.3d at 871 (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)).

### 1.   The Government's Intrusion Was Significant

Defendant Antonetti used excessive force with her bike when she struck Plaintiff and/or kept the crowd from dispersing. *See Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir.1994) (recognizing "physical blows" are substantial uses of force).

### 2.   The Government Interest for The Intrusion Under the Totality of the Circumstances

Next, the court must consider the government's interest for the intrusion under the totality of the circumstances. In G*raham*, the Supreme Court noted courts should consider such factors as (a) whether the suspect posed an immediate threat to the safety of the officer or others; and (b) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

#### a.   Immediacy of the Threat

The Ninth Circuit has repeatedly stated that "the most important of these factors is whether the suspect posed an immediate threat to the safety of the officer or others." *George v. Morris,* 736 F.3d 829, 838 (9th Cir. 2013) quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (internal quotations omitted).

Here, Plaintiff most almost no threat to the safety of officers or others. The protest that night had proceeded for **nearly four hours without a single incident of violence**. The only

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 12 -

crimes Defendants could cite was minimal property damage to some cars in the form of scratches, a person getting their hat knocked off their head (who did not even stay to report it to police) and a person that lit a car flare (but ignited nothing, threatened no one and damaged nothing). Plaintiff herself is a small woman who made no threats of violence nor did she hurt, injure or threaten injure anyone.

Defendants point to the fact that she was cussing and using abusive language, but courts have repeatedly found that this is protected language that does not justify arrest or force. *Duran v. City of Douglas*, 904 F.2d 1372 (9th Cir,. 1990) ("[i]narticulate and crude as [plaintiff's] conduct may have been, it represented an expression of disapproval toward a police officer with whom" it was not an arrestable offense nor did it justify force).

Plaintiff did not even refuse to cooperate or resist at any point during the seizure. *See Mackinney v. Nielsen*, 69 F.3d 1002, 1006 (1995) ("It is well established under California law that even an outright refusal to cooperate with police officers cannot create adequate grounds for police intrusion without more."); *People v. Bower*, 24 Cal.3d 638, 649 (Cal. 1979) ("this court has held that an outright refusal to cooperate with police officers cannot create adequate grounds for an intrusion which would otherwise be unjustifiable").

### b.  Severity of the Crime

Defendants contend that Plaintiff was suspected of violating Cal. Pen. Code § 409, which was failing to disperse at 50th St/Folsom for an unlawful assembly. As it has been exhaustively pointed out, this not a violent protest and Plaintiff was not violent. In fact, under the totality of circumstances it was a peaceful disobedience even during the arrests of the protestors and therefore the severity of the crime – as Defendants admitted – was minimal. (Def Mtn., p. 26).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 13 -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

### c.   Balancing the Factors

Finally, the court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion."  *Glenn*, 673 F.3d at 871 (quoting *Miller,* 340 F.3d at 964). When balancing the degree of force used against the governmental interests, "it is the need for force which is at the heart of the [analysis]." *Headwaters Forest Def. v. Cnty. of Humboldt ("Headwaters II")*, 276 F.3d 1125, 1130 (9th Cir.2002) (quoting *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 (9th Cir.1997)) (emphasis in original).

Although Defendant Antonetti may contend that she did not mean to strike Plaintiff, at summary judgment it is important that all reasonable inferences and the facts must be construed in a light favorable to Plaintiff. As such, Defendant struck Plaintiff with her bike, broke her ankle during a peaceful protest while Plaintiff was trying to comply with dispersal orders. From this point of view – which the Court must adopt – it is obvious that Defendant Antonetti used excessive force. *See Economus v. City and County of San Francisco,* 2019 WL 1483804 (N.D. April 3, 2019) ("The Ninth Circuit has held that the question of reasonableness of force is usually a question of fact to be determined by the jury") *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir. 1994); *see also Boyd v. City of Hermosa Beach*, No. CV0410528AGJTLX, 2007 WL 9717629, at *6 (C.D. Cal. Sept. 11, 2007), aff'd, 321 F. App'x 584 (9th Cir. 2009) (juries "are better equipped to make the determinations of credibility that are often critical to these [excessive force] cases").on of reasonableness of force is usually a question of fact to be determined by the jury.

### 3.   Evidence, Not Just Plainitiff's Testimony, Permits a Jury to Conclude Defendant Used Excessive Force

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 14 -

POINTER & BUENA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

As an aside, Defendants make the silly argument that even though it was dark, there were dozens of officers over four hours, and that Defendant Antonetti never provided her name directly, Plaintiff should have been able to identify exactly which officer hurt her by face and name and her failure to do so precludes her excessive claim. This is even though there was body-worn camera evidence capturing Defendant Antonetti's actions, her testimony and statements that Plaintiff identified her as the culprit. Boiled down, *reductio ad absurdum*, Defendants take the position that blind persons subjected to police abuse should not recover under the Fourth Amendment because they would not able to describe or identify the officers that injured them – despite video evidence and police reports. Fortunately, the caselaw is contrary to Defendants' position.

Officers may be held liable in excessive force cases even where the individual plaintiff cannot the officer if from the available evidence in the record a jury could conclude that an officer used excessive force. *See Rutherford v. City of Berkeley*, 780 F.2d 1444, 1448 (9th Cir. 1986) (allowing excessive force claim to proceed against officers even where the plaintiff could not identify exactly which officer kicked, punched or arrested him because a jury could conclude which did or did not from the evidence); *Klement v. Lizaola*, 2020 WL 5237931 at *4 (C.D. Cal. Aug. 11, 2020) (same); *Call v. Badgley*, 254 F.Supp.3d 1051, 1065-66 (N.D. Cal. May 19, 2017) (same); *Segal v. Los Angeles County*, 852 F.2d 1290 (9th Cir. 1988) (sufficient if evidence permits a jury to infer which officer used excessive force); *Onyenwe v. City of Corona*, 2103 WL 12169375 (C.D. Cal. Dec. 1, 2013) (denying summary judgment because "reasonable jury could infer that one of the named defendants was the officer who used force against Onyenwe, making the 'that decision ... one for the trier of fact.").

For the aforementioned reasons, Plaintiff's excessive force claim MUST PROCEED.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 15 -

**D.  PLAINTIFF'S RETALIATORY ARREST CLAIM MUST PROCEED**

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.' [Citation]." *Mendocino Envtl. Ctr. v. Mendocino Cty*., 192 F.3d 1283, 1300 (9th Cir. 1999). "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 citing *Hartman*, 547 U. S. at 259.

Here, taking all facts and reasonable inferences in Plaintiff's favor, Defendant Antonetti struck Plaintiff with her bicycle in retaliation for her cussing, abusive and crude language towards her – which for all of the aforementioned reasons – violated her First and Fourth Amendment rights and lacked probable cause. Indeed, even her crude and abusive speech was protected. *Duran v. City of Douglas*, 904 F.2d 1372 (9th Cir, 1990).

**E.  QUALIFIED IMMUNITY'S PROPER STANDARD**

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). The two-pronged qualified immunity analysis queries: (1) whether there was a deprivation of a constitutional or statutory right, and (2) whether that constitutional or statutory right was "clearly established" at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001); *Pearson*, 555 U.S. at 232.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 16 -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

At summary judgment, the Court construes the facts in the plaintiff's favor but the plaintiff bears the burden to show that the law is "clearly established" against the defendants. *Saucier*, 533 U.S. at 201; *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1059– 60 (9th Cir. 2006).

Since Plaintiff has already address the Fourth Amendment deprivation at great length in Sections A-D, she will address the "clearly established" prong of the Qualified Immunity doctrine now.[2] [3]

## **Clearly Established**

"'[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citation omitted)). "[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (citation omitted).

In the absence of binding precedent, the court should look to all available decisional law, including the law of other circuits and district courts. *Community House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). Unpublished district court decisions may also "inform" the court's analysis. *Sorrels v. McKee*, 290 F.3d 965, 971–72 (9th Cir. 2002).

---

[2] The Ninth Circuit has recently observed: "Some argue that the 'clearly established' prong of the analysis lacks a solid legal foundation." *Rodriguez v. Swartz*, 899 F.3d 719, 732 n.40 (9th Cir. 2018) (citing William Baude, Is Qualified Immunity Unlawful?, 106 Calif. L. Rev. 45 (2018); see also *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1872 (2017) (Thomas, J., concurring in part and concurring in the judgment) ("In an appropriate case, we should reconsider our qualified immunity jurisprudence.")). Nonetheless, the Circuit went on to note it "must apply" the test given the current state of the law. *Id.*

[3] Justice Thomas recently observed that the "text of § 1983 makes no mention of defenses of immunities". *Ziglar v. Abbasi*, 582 U. S,. 137 S.Ct. 1843, 1870 (2017), and there is no basis for the objective inquiry into clearly established law that our modern cases prescribe. *Baxter v. Bracey*, 140 S.Ct. 1862, 1864 (2020).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 17 -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

It will, however, "be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, [the court] can conclude that the law was clearly established on the basis of unpublished decisions only." *Id.* Indeed, Defendants are not entitled to qualified immunity "simply because there is no case on all fours prohibiting this particular manifestation of unconstitutional conduct," *see San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 492 F.3d 962 (9th Cir. 2005)

As the Supreme Court explained in *Hope v. Pelzer*, 536 U.S. 730 (2002), qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) quoting *Saucier v. Katz*, 533 U.S. 194, at 206 (2001).

This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell v. Forsyth*, 472 U.S. 511, 535, n. 12 (1985); but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Some specificity is required, "[b]ut general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has not previously been held unlawful." *Hope*, supra at 740-741 quoting *Anderson*, supra at 640 (quotations omitted).

### 1.   Unlawful Seizure

Defendants claimed that the law is not clearly established around indiscriminately arresting protestors without probable cause even when they have made no efforts to distinguish compliant peaceful protestors with violators of dispersal orders. Defendants hope to paint this incident as a situation that Defendant Antonetti had never confronted before so as to fall within

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 18 -

the protections of qualified immunity. But Defendant City's FRCP Rule 30 (b)(6) Person Most Knowledgeable on Defendant Antonetti's training at the time of the incident testified that she was trained she needed probable cause to make an arrest. (**Ex. 2 – Deposition of Brent Kaneyuki "Kaneyuki Depo", 20).** Furthermore, Defendant Antonetti was trained that she should not follow an unlawful arrest order from a supervisor (i.e. an order to make an arrest without probable cause. (Kaneyuki Depo, 22). Defendant Antonetti had monitor **no less than 100 protests before.** (Antonetti Depo, 88).

In addition, the issue of arresting protestors in groups is not new. In the context of First Amendment assemblies, only "when compelling circumstances are present, the police may be justified in detaining an undifferentiated crowd of protestors, **but only after providing a lawful order to disperse followed by a reasonable opportunity to comply with that order.**" *See Barham v. Ramsey,* 434 F.3d 565, 575 (D.C. 2006) (denying qualified immunity in arrest of undifferentiated park protestors); *Ybarra v. Illinois,* 444 U.S. 85 (1979); *Washington Mobilization Committee v. Cullinane,* 566 F.2d 107 (D.C.Cir.1977).

In California, the issue has been more particularly litigated and even more clearly established **for over twenty years.** In 2001, the Ninth Circuit held in *Dubner v. City and County of San Francisco,* 266 F.3d 959 (9th Cir. 2001) held "**the police are at least required to differentiate between the participants and innocent bystanders**." (Id. at 968) (emphasis added). Here, Defendant Antonetti and her colleagues made zero effort to distinguish violators of the dispersal order from those that were peacefully complying. Indeed, a clergy member and Plaintiff provided testimony that prior efforts to disperse at Trader Joe's were prevented through intimidation and physical force. Therefore, it has been clearly established for over twenty years officers cannot arrest protestors without differentiating between those that are complying with

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 19 -

POINTER & BUENA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

dispersal orders and those are not – and much less when they are preventing the compliant, peaceful protestors from leaving during a protest *without any violence. See Barham v. Ramsey,* 434 F.3d 565, 575 (D.C. 2006) (denying qualified immunity in arrest of undifferentiated park protestors); *Ybarra v. Illinois,* 444 U.S. 85 (1979); *Washington Mobilization Committee v. Cullinane,* 566 F.2d 107 (D.C.Cir.1977).

### 2.  Excessive Force

Again, all officers are trained – and it has been clearly established for decades - officers cannot use unreasonable force against lawful citizens without a basis and much less when they are complying with officers' instructions on how to disperse. *See Dubner v. City and County of San Francisco,* 266 F.3d 959 (9th Cir. 2001). Moreover, it has been clearly established for over 30 years that officers may not use force in retaliation for a person's abusive crude language. *Duran v. City of Douglas,* 904 F.2d 1372 (9th Cir,. 1990).

### 3.  Retaliatory Arrest

It has been clearly established for over 30 years that "[w]hether or not [an] officer was aware of the fine points of First Amendment law, to the extent [s]he is found to have detained [plaintiff] as punishment for the latter's insults, we hold that [s]he ought to have known that [s]he was exercising his authority in violation of well-established constitutional rights." *Duran v. City of Douglas,* 904 F.2d 1372 (9th Cir,. 1990). Here, taking all facts and inferences in Plaintiff's favor, Defendant Antonetti seized Plaintiff in retaliation because she was cussing and cursing at her.

### F.  PLAINTIFF'S BANE ACT CLAIM MUST PROCEED

The Tom Bane Civil Rights Act (Section 52.1) civilly protects individuals from all conduct aimed at interfering with rights that are secured by federal or state law where the

interference is carried out "by threats, intimidation or coercion." *Venegas v. County of Los Angeles* (2007) 153 Cal. App. 4th 1230, 1242. Claims under section 52.1 may be brought against public officials who are alleged to have interfered with protected rights, including police officers. *Simmons v. Superior Court* (2016) 7 Cal.App.5th 1113.

The *Cornell* Court found the "threat, intimidation or coercion" element of the claim ***does not*** have to be "transactionally independent" from the constitutional violation alleged, and found that the "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the [defendant] had a specific intent to violate the [plaintiff's civil rights], not by whether the evidence shows something beyond the coercion 'inherent' in the [violation]." *Cornell v. CCSF,* 17 Cal.App.5th 766 at 801-802 (Ct. App. 2017).

The *Cornell* Court explained that the application of the "specific intent standard is straightforward" and contains two requirements: 1) a purely legal question (for the court) of whether the right at issue is clearly delineated and plainly applicable under the circumstances, and 2) the purely factual question (for the jury) of whether the defendant committed the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right. (*Id.*, at 803.) "If both requirements are met, even if the defendant did not in fact recognize the [unlawfulness] of his act, he will be adjudged as a matter of law to have acted [with the requisite specific intent]—i.e., 'in ***reckless disregard*** of constitutional [or statutory] prohibitions or guarantees.'" (Id. at 766 (quoting *People v. Lashley* (1991) 1 Cal.App.4th 938, 948–949).

In the context of an unreasonable use of force case, the jury must find that the Defendants 'intended not only to use the force, but its unreasonableness, its character is 'more

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 21 -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

than necessary under the circumstances.'" (*Reese v. County of Sacramento*, (9th Cir. 2018) 888 F.3d 1030, at 1045.)

Here, a jury could find that Defendant Antonetti struck Plaintiff with her bike in retaliation for her cussing and abusive comments in reckless disregard for her constitutional right to be free from excessive force. For these reasons, Plaintiff's Bane Act claim should proceed.

### G.  PLAINTIFF'S BATTERY CLAIM MUST PROCEED

Battery claims must be predicated on showing that the Officer used unreasonable force. See, e.g., *Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010) (holding that "it is clear that an assault and battery claim against a police officer requires that unreasonable force be established". For the same reasons, Plaintiff showed Defendant used excessive force, her Battery claim must proceed.

### H.  PLAINTIFF'S FALSE ARREST/IMPRISONMENT CLAIM MUST PROCEED

Like the Fourth Amendment, officers require probable cause to make arrests. Cal. Penal Code § 847(b). "The existence of probable cause is necessary but not by itself sufficient to establish an arrest's lawfulness." *George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992).

"It has long been the law that a cause of action for false imprisonment is stated where it is alleged that there was an arrest without process, followed by imprisonment and damages. Upon proof of those facts the burden is on the defendant to prove justification for the arrest." *Cervantez v. J.C. Penney Co.*, (1979) 24 Cal.3d 579, 592; *see also Cox v. Griffin*, (2019) 34 Cal.App.5th 440, 446, fn. 6 ("False arrest and false imprisonment are the same tort. False arrest is a way of committing false imprisonment.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 22 -

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

For the same reasons, Plaintiff described how Defendant unlawfully seized her, the False Arrest/Imprisonment claim must proceed.

IV.      **CONCLUSION**[4]

For all of the aforementioned reasons, the Court should DENY Defendants' Motion for Summary Judgment.

Dated: December 14, 2022                    POINTER & BUELNA, LLP
                                            LAWYERS FOR THE PEOPLE

                                            /s/Patrick Buelna
                                            PATRICK M. BUELNA
                                            Attorney for PLAINTIFF

---

[4] Plaintiff did not address the Fourteenth Amendment for failure to address a serious medical need because they do not oppose Defendants' motion as to that specific claim.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Wood v. City of Sacramento, et al., Case No.: 2:20-cv-00497-WBS-DB

- 23 -
