1  Dean Gazzo Roistacher LLP
   Mitchell D. Dean, Esq. (SBN 128926)
2  Ricardo Baca, Esq. (SBN 319497)
   440 Stevens Avenue, Suite 100
3  Solana Beach, CA  92075
   Telephone:  (858) 380-4683
4  Facsimile:  (858) 492-0486
   E-mail: mdean@deangazzo.com
5          rbaca@deangazzo.com

6  Attorneys for Defendants
   City of Sacramento and Leah Antonetti
7

8              **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10 BRANDY WOOD,                    Case No.: 2:20-cv-00497-WBS-DB

11        Plaintiff,              **DEFENDANTS CITY OF SACRAMENTO'S
                                   AND LEAH ANTONETTI'S REPLY TO**
12     v.                         **PLAINTIFF'S OPPOSITION TO MOTION
                                   FOR SUMMARY JUDGMENT, OR IN THE**
13 CITY OF SACRAMENTO, a          **ALTERNATIVE, PARTIAL SUMMARY**
   municipal corporation and DOES **JUDGMENT**
14 1-50, inclusive,

15        Defendant.              Date:       January 23, 2023
                                  Time:       1:30 p.m.
16                                Courtroom:  5
                                  Judge:      William B. Shubb
17                                Magistrate: Deborah Barnes

18

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1
Defendants City of Sacramento's and Leah Antonetti's Reply          Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION..........................................................................................5

II.    SUMMARY JUDGMENT STANDARDS.............................................................5

III.   LEGAL ANALYSIS......................................................................................6

      A.   Wood Concedes There Was No Fourteenth
           Amendment Violation......................................................6

      B.   The Seizure of Wood was Proper....................................6

      C.   Wood's Arrest Was Proper Because There Was
           Probable Cause to Arrest Her.......................................10

      D.   Wood Cannot, And Has Not, Met Her Burden
           Of Establishing That Ofc. Antonetti Used Force
           Against Her.....................................................................12

      E.   Pamela McNally-Anderson Testified She Was
           Standing Between Wood and Ofc. Antonetti When
           The Crowd Was Pushed.................................................15

      F.   Wood's State Claims Must Fail Because She Failed
           to Establish A Genuine Dispute of Material Fact.........15

      G.   Qualified Immunity Entitles Ofc. Antonetti to
           Summary Judgment on Wood's Federal Claims.............17

      H.   Unlawful Seizure............................................................18

      I.   Excessive Force..............................................................21

      J.   Retaliatory Arrest..........................................................23

IV.    CONCLUSION..........................................................................................24

Defendants City of Sacramento's and Leah Antonetti's Reply          Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

### TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)......................................................................................*Passim*

*Aydin Corp. v. Loral Corp.*
    718 F.2d 897 (9th Cir. 2014)................................................................................5

*Ballentine v. Tucker*
    28 F.4th 54 (9th Cir. 2022)................................................................................23

*Barham v. Ramsey*
    434 F.3d 565 (D.C. 2006)..............................................................................8, 19

*City of Escondido, Cal. v. Emmons*
    139 S. Ct. 500 (2019)...................................................................................21, 22

*District of Columbia v. Wesby*
    138 S. Ct. 577 (2018)...................................................................................18, 21

*Dubner v. City and County of San Francisco*
    266 F.3d 959 (9th Cir. 2001).................................................................19, 20, 22

*Duran v. City of Douglas*
    904 F.2d 1372 (9th Cir. 1990).................................................................22, 23, 24

*Felarca v. Birgeneau*
    891 F.3d 809 (9th Cir. 2018)................................................................................21

*Guillen v. Carrillo*
    No. 1:19-cv-946-DAD-HBK 2022 U.S. Dist. LEXIS 56386
    (E.D. Cal. Mar. 28, 2022).....................................................................................5

*Hoffman v. Municipal Court for Oakland-Piedmont Judicial Dist.*
    3 Cal.App.3d 621 (Cal.App.1st Dist. Jan. 20, 1970)...........9, 10

*J.K.J. v. City of San Diego*
    42 F.4th 990 (9th Cir. 2022)................................................................................18

*Kisela v. Hughes*
    138 S. Ct. 1148 (2018)...................................................................................18, 22

*K.J.P. v. City of Santee*
    748 F. App'x 133 (9th Cir. 2019)........................................................................21

*Kramer v. Cullinan*
    878 F.3d 1156 (9th Cir. 2018)........................................................................18, 22

*Lane v. Franks*
    573 U.S. 228 (2014)...............................................................................................18

*Nieves v. Bartlett*
    139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019).........................................................23

3

Defendants City of Sacramento's and Leah Antonetti's Reply          Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

*S.B. v. Cty. of San Diego*
    864 F.3d 1010 (9th Cir. 2017)..........................................................................................18

*Scott v. Harris*
    550 U.S. 372 (2007)...........................................................................................6, 7, 9

*Sharp v. Cty. of Orange*
    871 F.3d 901 (9th Cir. 2017).............................................................................18

*United Steelworkers of Am. v. Phelps Dodge Corp.*
    865 F.2d 1539 (9th Cir. 1989)..............................................................5, 6, 11

**Statutes**

42 U.S.C. § 1983......................................................................................................5

Civil Code § 52.1................................................................................................16

Cal. Penal Code § 407..................................................................................8, 9

Cal. Penal Code § 408..................................................................................8, 9

Cal. Penal Code § 409................................................................................6, 7, 8

Defendants City of Sacramento's and Leah Antonetti's Reply         Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

**I.**

## INTRODUCTION

Defendants City of Sacramento and Leah Antonetti (collectively "Defendants") moved for summary judgment of plaintiff Brandy Wood's ("Wood") claims under 42 U.S.C. Section 1983 for excessive force and unlawful detention/arrest; violation of the First Amendment of U.S. – Retaliatory Arrest & Force; violation of the Fourteenth Amendment (uncontested); and Wood's state law claims.  No material facts are in dispute.  Summary judgment is appropriate.

**II.**

## SUMMARY JUDGMENT STANDARDS

A factual dispute is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The opposition evidence must be such that it could cause reasonable persons to disagree on whether the facts claimed by the moving party are true, "enough to require a jury or judge to resolve the parties' differing versions of the truth." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 2014). Accordingly, a non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue that must be resolved at trial.  *Guillen v. Carrillo*, No. 1:19-cv-946-DAD-HBK, 2022 U.S. Dist. LEXIS 56386, at *21 (E.D. Cal. Mar. 28, 2022). A "scintilla of evidence," or evidence that is "merely colorable" or "not significantly probative," is not sufficient to present a genuine issue as to a material fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542

5

Defendants City of Sacramento's and Leah Antonetti's Reply          Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

(9th Cir. 1989)[quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party does not meet this burden by simply theorizing a "plausible scenario" in support of the party's claims, especially when that proffered scenario conflicts with direct, contrary evidence. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III.**

**LEGAL ANALYSIS**

**A.    Wood Concedes There Was No Fourteenth Amendment Violation**

Plaintiff Brandy Wood does not oppose Defendants' motion for summary judgment as to her fifth cause of action for an alleged Fourteenth Amendment violation. At page 23 of her opposition papers, Wood writes "Plaintiff did not address the Fourteenth Amendment for failure to address a serious medical need because they do not oppose Defendants' motion as to that specific claim." (ECF No. 61 at p. 23: lines 25-26.) Accordingly, the Court should GRANT Defendants' Motion for Summary Judgment as to Wood's Fifth Cause of Action – Violation of the Fourteenth Amendment.

**B.    The Seizure of Wood was Proper**

Wood's argument that her arrest lacked probable cause is flawed from the outset. Wood assumes that California Penal Code section 409 was not a proper basis for arresting Wood because the assembly was not violent. (ECF No. 61 at p. 9: lines 18-23.) Wood conveniently ignores the fact that Deputy Chief Norm Leong declared and provided deposition testimony as to the multiple reasons why he deemed the protest an unlawful assembly.

///

Defendants City of Sacramento's and Leah Antonetti's Reply
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

Case No.: 2:20-cv-00497-WBS-DB

Of significance, Defendants included fourteen (14) material facts into its Separate Statement of Undisputed Facts in connection with why Deputy Chief Leong deemed the protest an unlawful assembly and why the protestors who remained were subject to arrest pursuant to Penal Code section 409.  (UMF 6-14, 17, 19-20, 32-33.)  Of these fourteen (14) material facts, Wood admitted to all but two (2).

Although Wood "disputes" Defendants' material fact number 14, she fails to provide any evidence in support of her denial. (ECF No. 61 at p. 4: lines 6-11.)  Here, there is no genuine factual dispute because Wood has not provided any evidence to support this denial.  *Liberty Lobby, Inc.*, 477 U.S. at 248.

Wood also "disputes" Defendants' material fact number 33, and then cites to Deputy Chief Leong's deposition testimony at page 30.  However, page 30 of Deputy Chief Leong's deposition testimony makes no reference to probable cause.  Wood infers that probable cause did not exist simply because protestors were not given instructions on how to leave. The evidence (albeit erroneous) that Wood relies on does not even rise to the level of a "scintilla of evidence" because page 30 of Deputy Leong's deposition transcript makes no mention  of probable cause.  In fact, Wood fails to attach the very page she is relying on as an exhibit for the Court's review.  Wood did not, and cannot, meet her burden by simply theorizing a "plausible scenario" that the arrest of Wood, pursuant to Penal Code section 409, was improper. *Scott*, 550 U.S. a 380.

Defendants provided a declaration from Deputy Chief Leong in which he specifically states, "Once the protest was deemed to

Defendants City of Sacramento's and Leah Antonetti's Reply
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

Case No.: 2:20-cv-00497-WBS-DB

be unlawful, and announcements were made of that fact, there was probable cause for police officers to arrest those that remained in the area pursuant to Penal Code section 409, which makes it a misdemeanor crime for failing to disperse and remain present in an area, once an unlawful assembly is declared." (UMF 33.)  Wood has not (and cannot) provided any evidence to dispute this fact.  Moreover, the term "probable cause" appears twice in the entire deposition transcript of Deputy Chief Leong.  In neither of those two occasions does Deputy Chief Leong contradict his declaration that there was probable cause for police officers to arrest those that failed to disperse pursuant to Penal Code section 409.

Wood also implies that the absence of violent crimes meant that the protest should not have been deemed an unlawful assembly.  Pursuant to California Penal Code section 409, "Every person remaining present at the place of any riot, rout, or unlawful assembly, after the same has been lawfully warned to disperse, except public officers and persons assisting them in attempting to disperse the same, is guilty of a misdemeanor." Cal. Penal Code § 409.  California Penal Code section 407 defines "unlawful assembly" as "[w]henever two or more persons assemble together to do an unlawful act, or do a lawful act in a violent, boisterous, or tumultuous manner, such assembly is an unlawful assembly."  Cal. Penal Code § 407.  Lastly, "[e]very person who participates in any rout or unlawful assembly is guilty of a misdemeanor."  Cal. Penal Code § 408.

Here, the Incident Commander overseeing the protest, Deputy Chief Leong deemed the protest an unlawful assembly based on vandalism, blocking of the intersections, verbal altercations,

Defendants City of Sacramento's and Leah Antonetti's Reply
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

Case No.: 2:20-cv-00497-WBS-DB

and an individual that held a light flare over vehicles. (UMF 32.) This fact was not disputed by Wood. (ECF No. 61-5 at p. 6: lines 22-26.) The protestors that remained, and did not disperse, were subject to arrest pursuant to Penal Code section 409. (UMF 32.) This fact was not disputed by Wood. (ECF No. 61-5 at p. 6: lines 22-26.) Announcements of this dispersal order and the fact that the assembly was unlawful, were given loudly to the crowd from 9:09 p.m. to 9:40 p.m. This fact was not disputed by Wood. (ECF No. 61-5 at p. 6: line 22 – p. 7: line: 2.)

Deputy Chief Leong believed, based on the totality of facts, that there was enough to deem the protest an unlawful assembly. Wood has not provided any evidence to contradict this material fact. Deputy Chief Leong's decision to deem it an unlawful assembly is unchallenged by Wood by anything more than a mere "plausible scenario." *Scott*, 550 U.S. at 380. Defendants provided substantive evidence in the form of a declaration by Deputy Chief Leong that for the most part has been unchallenged by Wood. Pursuant to Penal Code section 408, "[e]very person who participates in any rout or unlawful assembly is guilty of a misdemeanor." The term "unlawful assembly" as used in Penal Code sections 407 and 409, is not unconstitutionally vague and overbroad insofar as it makes it a crime to remain at the scene of an assembly to commit an unlawful act after being warned to disperse, the statute uses clear and unambiguous language and is sufficiently definite so that a person of ordinary understanding would know when he is violating it. *Hoffman v. Municipal Court for Oakland-Piedmont Judicial Dist.* 3 Cal.App.3d 621, 626

Defendants City of Sacramento's and Leah Antonetti's Reply
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment                Case No.: 2:20-cv-00497-WBS-DB

1    (Cal.App.1st Dist. Jan. 20, 1970).   The statutes related to

2    unlawful assemblies are unambiguous.   A riot does not need to be

3    occurring in order to deem a protest an unlawful assembly.   Wood's

4    argument that in order for an unlawful assembly to be declared,

5    the protestors must have been engaged in acts of violence.

6    However, a review of the statutes clearly does not support this

7    contention.

8    **C.    <u>Wood's Arrest Was Proper Because There Was Probable Cause</u>**

9    **<u>to Arrest Her</u>**

10   As an initial matter, Officer Chad Lewis ("Ofc. Lewis") had

11   probable cause to arrest Wood on March 4, 2019.   (UMF 61, 62,

12   64.)   Wood, again, "disputes" the Defendants' material facts

13   related to Ofc. Lewis' ultimate arrest of Wood.   Notably absent

14   from Wood's denials, however, is any probative evidence to

15   support her denial of material facts nos. 60, 61, 64.   Rather

16   than providing substantive evidence to support her denials, Wood

17   simply points the Court to a total of three (3) minutes of video

18   footage from Officer Leah Antonetti's ("Ofc. Antonetti") body

19   worn camera.   (ECF No. 61-5 at p. 10: line 18 – p. 11: line 7.)

20   She also references Ofc. Antonetti's deposition testimony, but

21   the testimony cited by Wood simply infers that Ofc. Antonetti

22   failed to discern protestors from non-protestors.   This testimony

23   does not eliminate the fact that _Ofc. Lewis_ had probable cause

24   to arrest.   Similarly, Ofc. Antonetti's body worn camera footage

25   does not create a genuine dispute of fact as to whether there

26   was probable cause for Ofc. Lewis to arrest Wood.

27   Wood is grasping at straws by arguing that the arrest of

28   Wood lacked probable cause.   She has provided zero evidence to

Defendants City of Sacramento's and Leah Antonetti's Reply           Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

contradict the existence of the material fact that Ofc. Lewis had probable cause to arrest Wood. Just as a brief history, Wood attended the protest on March 4, 2019 (UMF 1), Wood marched with the other protestors around Folsom Blvd. and other neighboring streets (UMF 2), Wood marched for two (2) to three (3) hours before she first heard the dispersal orders (UMF 21), and she recalls officers telling the protestors to disperse (UMF 22). Moreover, Wood was told how to leave the protest by a police officer after a loud and audible dispersal order was given, yet, she decided to remain. (UMF 31.) Wood was simply not a bystander who accidently joined the unlawful assembly. She was an active protestor who failed, and refused, to disperse after multiple dispersal orders were given. These material facts are all identified in Defendants' Separate Statement of Undisputed Facts and supported by tangible and clear evidence. Wood, in stark contrast, simply argues that there was no probable cause based on three minutes of video footage and an excerpt of deposition testimony from Ofc. Antonetti. Wood cannot meet her burden by simply relying on "colorable" or "not significantly probative" contentions to create a genuine issue as to a material fact. *United Steelworkers of Am.*, 865 F.2d at 1542 [quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)].

As a reminder, Ofc. Antonetti did not arrest Wood on March 4, 2019. Wood makes these conclusory statements that Ofc. Antonetti was involved in the arrest of Wood because she was on the skirmish line with her bicycle, however, she conveniently ignores the fact that Ofc. Antonetti's body worn camera footage reveals that she was not even on the skirmish line when Wood was

Defendants City of Sacramento's and Leah Antonetti's Reply
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment                    Case No.: 2:20-cv-00497-WBS-DB

arrested.[1]  Ofc. Antonetti did not participate in the arrest of Wood nor was she near Ofc. Lewis when he effectuated the arrest.

**D.**  **Wood Cannot, And Has Not, Met Her Burden Of Establishing That Ofc. Antonetti Used Force Against Her**

Wood's legal analysis under her use of force section unequivocally states that "Defendant Antonetti used excessive force with her bike when she struck Plaintiff and/or kept the crows from dispersing."  (ECF No. 61 at p. 12: lines 7-9.)  In support of this contention, she relies on Ofc. Antonetti's body worn camera footage and two pages from her own deposition transcript.  The following will address each piece of evidence in the order presented.

Wood denies Defendants' material facts nos. 52, 55, 56, 57, and 58, which each relate to the alleged use of force against her. She relies mostly on the same evidence for each of these denials.  (ECF No. 61-5 at p. 52: line 21 – p. 53: line 14.) Wood's denial of material fact no. 52 cites to Ofc. Antonetti's body worn camera footage at 3:06:40-3:08:00.  However, a frame-by-frame review of this evidence does not show Ofc. Antonetti ever striking or using her bicycle to make contact with Wood. There is nothing in this span of Ofc. Antonetti's body worn camera footage that would rise to the level of creating a genuine issue as to a material fact.

Wood also disputes material fact no. 52 by citing to pages 90-91 of her own deposition transcript.  (ECF No. 61-5 at p. 52:

---

[1] Body Worn Camera footage of Ofc. Antonetti at Axon Time 06:05:15 shows the California Highway Patrol relieving Ofc. Antonetti and the other bike officers from the skirmish line.  The video was lodged by Wood in her Motion for Partial Summary Adjudication.

Defendants City of Sacramento's and Leah Antonetti's Reply    Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

lines 21-24.)  Neither page 90 nor page 91 contains any language that expressly states, or even infers, that Ofc. Antonetti was the officer responsible for striking Wood with her bicycle. (See Exhibit A at pages 90-91 of Ricardo Baca's Notice of Lodgment). Wood testified that her foot got stuck in the spoke of bicycle wheel and her foot bent backwards. *Id*.  The other testimony within these two pages has nothing to do with Wood identifying the Sacramento Police Department officer by name or description. *Id*.

Additionally, if one continues watching Ofc. Antonetti's body worn camera footage one can hear Wood say, "they tripped me with their bike", at Axon time 05:54:09.  This statement is aligned with Wood's deposition testimony in which she testified that she could not identify the officer who was holding the bicycle that allegedly caused her injury (UMF 55), she does not know if the officer was male or female (UMF 56), she did not know the name of the officer that allegedly injured her (UMF 57), and she did not see the face of the officer that was holding the bicycle that allegedly caused her injury to her left foot (UMF 58).  Despite this evidence directly from Wood's own deposition testimony, she still denies it and cites to the same body worn camera footage at 3:06:40-3:08:00 as she did in her dispute of material fact no. 52.  This short span of video footage does not contradict Wood's own deposition testimony which the Defendants rely on in support of material facts nos. 55-58.

The second clip from Ofc. Antonetti's body worn camera footage that Wood relies on to dispute material facts nos. 55-58 is found at 2:24:30-2:25:10.  However, this video shows Ofc.

Defendants City of Sacramento's and Leah Antonetti's Reply
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment
Case No.: 2:20-cv-00497-WBS-DB

Antonetti near the parking lot of the Trader Joe's telling people to back up.  This has nothing to do with Wood, the 51st Street bridge, or the interaction between Wood and Ofc. Antonetti. Thus, Wood has failed to create a genuine issue as to these material facts based on Ofc. Antonetti's body worn camera footage at 02:24:30-02:25:10.

Turning now to Wood's argument that Defendants stand for the proposition that a blind person should not recover under the Fourth Amendment because they would be unable to describe or identify the officer that injured them, the argument is nonsensical and misplaced. (ECF No. 61 at p. 15: lines 1-11.) First, defendants never made this argument.  Wood simply wishes to draw attention away from the fact that there is no evidence that she can produce that Ofc. Antonetti was the officer who allegedly used forced against her.  Whether a person is blind or not, the expectation is simply that a plaintiff is expected under the law to produce evidence to support their claim.  This is the exacting standard that Defendants are demanding, as is any court, from Wood.  Based on her anemic evidence, it is clear Wood cannot meet her burden.

Wood's disputes to material facts nos. 52, 55, 56, 57, and 58 are nothing more than a "scintilla of evidence" that have no probative value, thus, it is not enough to create a genuine issue of material fact as to whether Ofc. Antonetti used force against Wood.

///

///

///

Defendants City of Sacramento's and Leah Antonetti's Reply
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

Case No.: 2:20-cv-00497-WBS-DB

**E.     Pamela McNally-Anderson Testified She Was Standing Between Wood and Ofc. Antonetti When The Crowd Was Pushed**

Oddly, Wood disputes the testimony of percipient witness Pamela McNally-Anderson ("Ms. McNally") by citing to Ofc. Antonetti's body worn camera footage at 03:07:20-03:07:40. In Ofc. Antonetti's body worn camera footage one can clearly see Ms. McNally saying "ouch, ouch, ouch" at Axon time 05:53:22. Ms. McNally, not Wood, is the person whose Ofc. Antonetti's body worn camera footage records moving her mouth and saying "ouch, ouch, ouch." During this same brief twenty-second period, one can clearly see Ms. McNally standing between Wood and Ofc. Antonetti. This is recorded on Ofc. Antonetti's and Officer Bryon Stone's body worn camera footage. (UMF 49.) Even Ms. McNally testified that she was standing between Wood and Ofc. Antonetti when the crowd was pushed from the other side. (UMF 47.) Strangely, Wood did not dispute material fact no. 47 but she disputed material fact no. 49, both material facts relate to Ms. McNally's own testimony that she was standing between Wood and Ofc. Antonetti when the crowd was pushed. Wood has failed to provide more than a "plausible scenario" in support of her contention that Ms. McNally was not standing between Wood and Ofc. Antonetti when the crowd was pushed forward. *Scott*, 550 U.S. at 380.

**F.     Wood's State Claims Must Fail Because She Failed to Establish A Genuine Dispute of Material Fact**

As Wood astutely points out, her Bane Act claim, Battery claim, and False Arrest/Imprisonment claim are predicated on her federal claims.

///

Defendants City of Sacramento's and Leah Antonetti's Reply
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

Case No.: 2:20-cv-00497-WBS-DB

As to her Bane Act claim, Wood does not provide any material facts to support her allegation that there was a constitutional violation of Wood's rights. The material facts that she "disputes" are supported, again, by a few minutes of video from Ofc. Antonetti's body worn camera footage that this court can plainly view for itself. Even if given the most reasonable and generous inference in favor of Wood, the body worn camera footage video that Wood relies on does not show that Ofc. Antonetti ever used any force against Wood. By Wood's own account, she does not know who struck her with the bicycle. (UMF 55-58.) Here, Wood has not met her burden of establishing a genuine dispute of material fact related to her Bane Act claim.

No First or Fourth or Fourteenth Amendment violations exists. This precludes Wood's claim under Civil Code section 52.1. Further, section 52.1 requires specific intent to violate Wood's constitutional rights and Wood has no such evidence.

As to her Battery claim, Wood did not meet her burden of establishing a genuine issue of material fact that Ofc. Antonetti was the officer that battered her. Again, Wood relies mostly on a short clip from Ofc. Antonetti's body worn video for the proposition that Wood was battered by Ofc. Antonetti. In order to drive this point home, she disputes Ms. McNally's deposition testimony that she was standing between Ofc. Antonetti and Wood when the crowd was pushed forward. (UMF 48-49.) She offers nothing more than a short twenty (20) second clip to support this contention that Ms. McNally was not standing between the two women.

///

Defendants City of Sacramento's and Leah Antonetti's Reply      Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

As to her false arrest/imprisonment claim, Wood conveniently ignores the material fact that Ofc. Lewis was the lone arresting officer, even based on her own testimony.  (UMF 59.)  She also ignores the important fact that Ofc. Lewis had probable cause to arrest Wood.  She does not contradict this fact.  Instead, she points the Court (again) to Ofc. Antonetti's body worn camera footage.  What two short videos have to do with having probable cause to arrest Wood is unknown to the Defendants.  Wood argues that Ofc. Antonetti is liable for <u>Ofc. Lewis</u> arresting Wood simply because she was part of the skirmish line on the 51st Street bridge.  She also argues that Wood was seized at the Trader Joe's by Ofc. Antonetti.  A review of Ofc. Antonetti's body worn camera footage while she is at the Trader Joe's parking lot confirms that at no point did she interact with Wood or prevent her from leaving the parking lot of Trader Joe's.  Wood ignores the fact that the body worn camera footage from Ofc. Lewis shows that he alone arrested Wood.  Moreover, Ofc. Antonetti's body worn camera footage shows that she did not participate in the arrest of Wood nor was she on the skirmish line when the protestors were arrested. As with her other claims, Wood relies on evidence that is "merely colorable" and "not significantly probative," which is not sufficient to present a genuine issue as to a material fact. *Liberty Lobby, Inc.*, 477 U.S. at 248.

**G.   Qualified Immunity Entitles Ofc. Antonetti to Summary Judgment on Wood's Federal Claims**

To be "clearly established," precedent existing at the time of the officer's conduct must "squarely govern[] the specific

17

Defendants City of Sacramento's and Leah Antonetti's Reply
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment                          Case No.: 2:20-cv-00497-WBS-DB

1    facts" of the present case, *Kisela v. Hughes*, 138 S. Ct. 1148,

2    1153 (2018) (per curium), such that it "placed the

3    constitutionality of the officer's conduct 'beyond debate.'"

4    *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "So

5    long as existing case law 'did not preclude' an official from

6    reasonably believing that his or her conduct was lawful, the

7    official has a right to qualified immunity'" *Kramer v. Cullinan*,

8    878 F.3d 1156, 1163 (9th Cir. 2018) (quoting *Lane v. Franks*, 573

9    U.S. 228, 243 (2014)).

10        "In analyzing whether rights are clearly established" the

11   court must "look to then-existing 'cases of controlling

12   authority' or, absent such cases, to a 'consensus' of persuasive

13   authorities." *J.K.J. v. City of San Diego*, 42 F.4th 990, 1000

14   (9th Cir. 2022); see *Sharp v. Cty. of Orange*, 871 F.3d 901, 911

15   (9th Cir. 2017) ("[P]rior precedent must be 'controlling'-from

16   the Ninth Circuit or Supreme Court-or otherwise be embraced by a

17   'consensus' of courts outside the relevant jurisdiction."); *S.B.

18   v. Cty. of San Diego*, 864 F.3d 1010, 1016 (9th Cir. 2017)

19   ("'[D]istrict court decisions - unlike those from the courts of

20   appeals - do not necessarily settle constitutional standards or

21   prevent repeated claims of qualified immunity.'").  Wood has

22   pointed this court to no such authority.

23   **H.   <u>Unlawful Seizure</u>**

24        Wood alleges that the unlawful seizure occurred when the

25   protestors were indiscriminately arrested without probable

26   cause. (ECF No. 61 at p. 18:21-26.)  To support this allegation

27   Wood relies on a decision from the Court of Appeals for the

28   District of Columbia Circuit titled *Barham v. Ramsey*, 434 F.3d

Defendants City of Sacramento's and Leah Antonetti's Reply
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment                    Case No.: 2:20-cv-00497-WBS-DB

565, 575 (D.C. 2006). This case cannot satisfy the "clearly established" prong under qualified immunity because the case is not from the Ninth Circuit or Supreme Court. Furthermore, in *Barham*, a mass arrest occurred "with no prior warning to the occupants of the park to disperse and no warning to them that arrest was imminent." *Barham v. Ramsey*, 369 U.S. App. D.C. 146, 149, 434 F.3d 565, 568 (2006). In our case, fifteen (15) dispersal orders were given from approximately 9:09 p.m. to 9:40 p.m. (UMF 14.) While Wood wrote "DENY" on this material fact, she failed to provide any evidence to support her denial. Wood also heard the dispersal orders while at the Trader Joe's. (UMF 16.) She had been marching for two to three hours before she first heard the dispersal order. (UMF 21.) She recalls officers telling the crowd to "disperse" with a loudspeaker. (UMF 22-24.) Again, the *Barham* case is starkly different from the facts in the instant case.

Wood also relies on a Ninth Circuit case titled *Dubner v. City and County of San Francisco*, 266 F.3d 959 (9th Cir. 2001) to support her allegation that there was "clearly established" law that prevented Ofc. Antonetti from seizing Wood. Although *Dubner* is Ninth Circuit authority, Wood's reliance on *Dubner* is misplaced because the case does not involve a bicycle, or a skirmish line, or a plaintiff that heard the dispersal orders. In *Dubner*, an attorney and amateur photographer went to a demonstration intending to take photographs. *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 962 (9th Cir. 2001). Dubner was at the demonstration as a legal observer "not as a participant." *Id*. Dubner did not hear the dispersal orders before she was

Defendants City of Sacramento's and Leah Antonetti's Reply       Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

arrested.  *Id*. at 963.  Dubner was arrested pursuant to a citizen's arrest without the citizen describing the alleged offense or pointing her out to the police.  *Id.* at 964.  The facts in *Dubner* are obviously inapposite to our facts.

Unlike *Dubner*, Wood was an active participant during the March 4, 2019 protest.  (UMF 2 & 21.)  She marched for two to three hours before she first heard the dispersal order.  (UMF 21.)  Wood heard the dispersal orders (UMF 21-22) and is even recorded on body worn camera footage asking an officer how she can leave the protest (UMF 31).  Moreover, Wood was arrested by Ofc. Lewis who had been monitoring the protest from the outset. Ofc. Lewis had probable cause to arrest Wood based on his observations and belief that Wood had committed a public offense in his presence. (UMF 62.)  Based on Ofc. Lewis's observations, he had reasonable cause to believe that Wood failed to disperse and remained present in the area where an unlawful assembly had been declared and multiple audible orders to disperse had been given. (UMF 64.)  Unlike *Dubner*, the arrest was effectuated by an officer based on his observations and belief that Wood had committed a public offense in his presence, not by a citizen's arrest.  None of these material facts which relate to probable cause were disputed with probative evidence.

There is nothing in the *Dubner* case that would have put Ofc. Antonetti on notice that seizing an active protestor after she failed to comply with dispersal orders was a constitutional violation that was "clearly established" law. Accordingly, Ofc. Antonetti is entitled to qualified immunity as to Wood's federal unlawful seizure claim.

Defendants City of Sacramento's and Leah Antonetti's Reply
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

Case No.: 2:20-cv-00497-WBS-DB

1  Contrary to Wood's belief, Ofc. Antonetti's training is not

2  considered "clearly established" law.  And, Wood cites to no

3  authority supporting such a stance.

4  **I.    Excessive Force**

5  Wood alleges excessive force by Ofc. Antonetti when she

6  struck her with bicycle.  (ECF no. 61 at p. 12: lines 7-9.)  To

7  overcome qualified immunity, Wood had to establish that Ofc.

8  Antonetti struck her with her bicycle in a manner in violation

9  of the Fourth Amendment and clearly established law made such

10  strike a Fourth Amendment violation.  Wood has not alleged that

11  Ofc. Antonetti used any other force against her.  See *District*

12  *of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018); *Felarca v.*

13  *Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018); *K.J.P. v. City of*

14  *Santee*, 748 F. App'x 133, 134 (9th Cir. 2019). She does not.

15  Wood's opposition only address the "force" used by Ofc.

16  Antonetti with her bicycle.  (ECF No. 61 at p. 20: lines 6-13.)

17  Yet, she provides no evidence to support this contention.  (See

18  generally ECF No. 61 and 61-5.  Wood's legal analysis under her

19  opposition to qualified immunity as to her excessive force claim

20  fails to identify any "clearly established" law.

21  Wood makes a conclusory statement that "it has been clearly

22  established for decades – officers cannot use unreasonable force

23  against lawful citizens without a basis and much less when they

24  are complying with officers' instructions on how to disperse."

25  This broad general statement of Fourth Amendment law, untethered

26  to the specific facts of the case, is insufficient to constitute

27  clearly established law for purposes of qualified immunity. *City*

28  *of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (per

Defendants City of Sacramento's and Leah Antonetti's Reply          Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

curium); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152-53 (2018) (per curium).

Wood does cite case law to argue it was clearly established that the force used violated the Fourth Amendment.  But none of the two cases she cites is factually similar to our facts.  None involved an individual being struck with a bicycle.  Thus, none of the cases "squarely govern[] the specific facts" of this case. *Kisela*, 138 S. Ct. at 1153.  Because of this, none of the cases "preclude[d]" Ofc. Antonetti "from reasonably believe that [her] conduct was lawful." *Kramer v. Cullinan*, 878 F.3d 1156, 1163 (9th Cir. 2018).

*Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 962 (9th Cir. 2001) has nothing to do with excessive force.  Wood also relies on *Duran v. City of Douglas*, 904 F.2d 1372 (9th Cir. 1990), which is a case involving the use of force of a plaintiff who was removed from a vehicle after he made obscene gestures at the defendant officer.  The *Duran* case involved a scuffle between the plaintiff and a police officer after a traffic stop.  *Duran v. City of Douglas*, 904 F.2d 1372, 1374-1375 (9th Cir. 1990). *Duran* is not about a protest, an officer using a bicycle on a skirmish line, or about a plaintiff who gets their foot stuck on a spoke of a bicycle wheel.  See generally *Duran v. City of Douglas*, 904 F.2d 1372 (9th Cir. 1990).  In the instant case, there is no scuffle between Ofc. Antonetti and Wood, as there was in *Duran* between the plaintiff and defendant officer.  In *Duran*, there is different force under different circumstances. Thus, none of these two cases help Wood.

///

Defendants City of Sacramento's and Leah Antonetti's Reply          Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

1  **J.   Retaliatory Arrest**

2      Wood argues that "[i]t has been clearly established for over

3  30 years that '[w]hether or not [an] officer was aware of the

4  fine points of First Amendment law, to the extent [s]he is found

5  to have detained [plaintiff] as punishment for the latter's

6  insults, we hold that [s]he ought to have known that [s]he was

7  exercising his authority in violation of well-established

8  constitutional rights.'" *Duran v. City of Douglas*, 904 F.2d 1372

9  (9th Cir. 1990).   (ECF No. 61 at p. 20: lines 15-19.) First

10  Amendment retaliatory arrest claims, "must generally 'plead and

11  prove the absence of probable cause,' because the presence of

12  probable cause generally 'speaks to the objective reasonableness

13  of an arrest' and suggests that the 'officer's animus' is not

14  what caused the arrest." *Ballentine v. Tucker*, 28 F.4th 54, 62

15  (9th Cir. 2022) (citing *Nieves v. Bartlett*, 139 S. Ct. 1715,

16  1723-24, 204 L. Ed. 2d 1 (2019))

17      As an initial matter, bluntly ignored by Wood, Ofc.

18  Antonetti did not arrest Wood, Ofc. Lewis did. (UMF 63.)   Ofc.

19  Lewis had probable cause to arrest Wood. (UMF 62 & 64.)   Wood

20  fails to provide any evidence that contradicts Defendants'

21  material facts that speak about Ofc. Lewis having probable cause

22  to arrest Wood on March 4, 2019.

23      Here, again, Wood does cite case law to argue it was clearly

24  established that her arrest (with probable cause) violated the

25  First Amendment.   The lone case that Wood cites to is *Duran v.*

26  *City of Douglas*, 904 F.2d 1372 (9th Cir. 1990).   This is the same

27  case she cites to support her excessive force argument.   In

28  *Duran*, the plaintiff was driving and making crude gestures at

Defendants City of Sacramento's and Leah Antonetti's Reply       Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment

1   the officer. *Duran*, 904 F.2d at 1378. The defendant officer in

2   *Duran* admitted that he stopped Duran because he made obscene

3   gestures and yelled profanities toward him. *Id.* Wood's problem

4   – apart from the *Duran* case being entirely factually different –

5   is she was never singled out or "pulled over" by Ofc. Antonetti,

6   and there was no vehicles or protest involved. Once again, the

7   *Duran* case has totally different facts and circumstances.

8   **IV.**

9   **CONCLUSION**

10      For the aforementioned reasons, Defendants respectfully

11   request the Court grant their Motion for Summary Judgment.

12

13   Dated: December 22, 2022      Dean Gazzo Roistacher LLP

14

15               By: */s/ Ricardo Baca*

16               Mitchell D. Dean
               Ricardo Baca

17               Attorneys for Defendants
               City of Sacramento and Leah

18               Antonetti
               E-mail: mdean@deangazzo.com;

19               rbaca@deangazzo.com

20

21

22

23

24

25

26

27

28

Defendants City of Sacramento's and Leah Antonetti's Reply          Case No.: 2:20-cv-00497-WBS-DB
to Plaintiff's Opposition to Motion for Summary Judgment
Or, In the Alternative, Partial Summary Judgment