**ADANTÈ D. POINTER, ESQ., 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Suite 208
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LAWYERSFTP.COM
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com

Attorneys for Plaintiff(s)

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDY WOOD,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF SACRAMENTO, a municipal corporation; LEAH ANTONETTI, in her individual capacity as a law enforcement officer for the Sacramento Police Department; and DOES 1-50, inclusive. | Case No.: 2:20-cv-00497-WBS-DB<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION**<br><br>DATE: Jan 23, 2023<br>TIME: 1:30 PM<br>CRTRM: 5 |

## I. INTRODUCTION

Defendants' entire introduction and Opposition brief is littered with *ad hominem*[1] to distract the Court from the unlawful seizure rather than addressing the Plaintiff motion on the merits. Defendants' central complaints are that Plaintiff filed their opening brief at the "eleventh hour", was "defective in **style**" [emphasis added] and that Plaintiff did not spend enough pages on analysis. (ECF 60, Def Opp. at p. 5).

But none of these complaints address the central issue – whether the undisputed evidence demonstrated Defendants unlawfully seized Plaintiff Brandy Wood – which they did. In fact, Defendant City paid over $500,000 to settle the class action suit to the rest of the protestors in this incident that were not injured because Defendant City recognized they had unlawfully seized and arrested protestors.[2] Plaintiff simply opted out of the class action, but was invited to join, because she was the only one that had alleged a fractured ankle or similarly serious injury to her knowledge. (Buelna Decl.)

Despite writing over a hundred pages of argument, Defendants' strenuous frustrations do not change evidence. And when you have a strong case, it should be simply put. Based on the

---

[1] Defendants wrote briefs that were 53 pages (Opening), 36 pages (Opposition) and Reply pages (24). Defendants counsel emailed Plaintiff's counsel inquiring if this Court had a page limit and learned it did not. (Buelna Decl.) Obviously, Defendants declined to edit or condense their brief. Quite frankly, Plaintiff's counsel finds and practices that good briefs are pithy and supported by concise evidence. Notably, in Defendants over 100 pages of brief writing the pivotal caselaw for protest analysis is **glaringly - if not completely - absent** and some of their arguments are directly against well-established caselaw. (e.g. arguments that a plaintiff needs to identify which officer injured them rather than being able to provide evidence from which a jury could conclude which officer injured them). *See Rutherford v. City of Berkeley,* 780 F.2d 1444, 1448 (9th Cir. 1986) (allowing excessive force claim to proceed against officers even where the plaintiff could not identify exactly which officer kicked, punched or arrested him because a jury could conclude which did or did not from the evidence);
Defendants also complained that Plaintiff's counsel filed the brief at 11 PM and insinuated that he wrote the brief simply to "muddy" the waters. Unfortunately, Plaintiff's counsel's time to work on, edit and finalize briefs are done in the evenings due to professional and familial obligations. (Buelna Decl.). Although flattered, Plaintiff's counsel does not and cannot write Rule 56 briefs in just 6 hours nor takes the time to do so simply to "muddy" the waters. (Buelna Decl.). In fact, Plaintiffs' Opposition Brief and this Reply Brief will be filed at evening hours for the very same reason. They are timely briefs and Plaintiff objects to Defendants' personal attacks. (Buelna Decl.)

[2] "City agrees to pay more than $500k in settlement over Stephon Clark protest in East Sacramento" https://www.abc10.com/article/news/local/sacramento/city-agrees-settlement-over-stephon-clark-protest-arrests/103-9ce83228-c134-4c52-bcb7-6ccf201d99ec

facts Defendants *admitted* in their own brief and response: Defendant Antonetti unlawfully seized Plaintiff.

### 1. DEFENDANT ANTONETTI SEIZED PLAINTIFF

Defendants' Rule 56 brief failed to provide this Court the correct caselaw to analyze Fourth Amendment Seizures. In truth, Defendants did not provide ***any caselaw at all in their Opposition Brief around seizures.*** (Def Opp, 11). Either Defendants did not research the relevant case law or – more likely – are afraid that the consequences of the analysis indicate as a matter of law they unlawfully seized Plaintiff.

As Plaintiff analyzed at great detail in her Opening and, moreover, in her Opposition Brief, a Fourth Amendment seizure occurs "[w]henever an officer restrains the freedom of a person to walk away." *Brower v. Cty. of Inyo*, 489 U.S. 593, 595 (1989) (citation and quotations omitted). Defendants do not dispute that Defendant Antonetti restrained the freedom of Plaintiff to walk away. (**ECF 60-1, Facts #42-45**). Therefore, what more analysis needs to occur under seizure. In their opposition, they claim there was no analysis but this exact caselaw, evidence citation and argument was made in Plaintiff's opening motion – and defendants never disputed it in their Response to Plaintiff's Separate Statement of Undisputed Material Facts. (**ECF 60-1, Facts #42-45**).[3] As such, Defendant Antonetti **seized** Plaintiff under the Fourth Amendment.

### 2. DEFENDANTS UNREASONABLY SEIZED PLAINTIFF

Again, there is no dispute that dispersal orders were given to disperse from 50th St/Folsom Blvd – but the arrests were made on 51st Street. (Def. Opp. at p. 13; **ECF 60-1, Def. Response to Pltf SSUMF at Fact #53)**. Defendants also admitted that there "were no

---

[3] Defendants also made strange arguments in both their brief and Response to Plaintiff's Separate Statement of Undisputed Material Facts that Plaintiff only cited to two (2) of their fifty-eight (58) undisputed material facts in their legal argument but Plaintiff's opening brief clearly cited and supported each and every of those fifty-eight (58) facts in their the first six pages of brief which supported and contextualized their legal argument. (Pltf Opening Brief, at pp. 2-8).

instructions on what path, direction or street the protestors must disperse. There was no instruction that it was prohibited to leave, walk or go back to their cars/homes on 51st or any other 51st. The sole instruction was to disperse from the intersection." (**ECF 60-1, Def. Response to Pltf SSUMF at Fact #8).**

Defendants' own Rule 30 (b)(6) Person Most Knowledgeable Witness regarding enforcement of protest procedures admitted that officers cannot give dispersal orders, take actions to prevent their dispersal then arrest them for failing to disperse. **(Ex. 1** – Deposition of Brent Kaneyuki, at pp. 37-38). However Defendant A

However, Defendants admitted that officers were refusing to let protestors leave 50th St/Folsom Blvd in compliance with those dispersal orders including Plaintiff. (**ECF 60-1, Def. Response to Pltf SSUMF at Fact #30).** Among those officers was Defendant Antonetti who *explicitly* admitted to making no effort to "discern who was who and who wanted to leave because at that moment, everybody was going to be arrested" including Plaintiff. (Antonetti Depo, 105:3-5). Despite Defendants accusation that Plaintiff did not attach other evidence "multiple witnesses" alleged that they were not being permitted to leave the protest in compliance with the dispersal orders, Defendants admitted that Defendant Antonetti's body-worn camera captured protestors expressing **exactly that. (ECF 60-1, Def. Response to Pltf SSUMF at Fact #35).** Defendant Antonetti's refusal and use of her bike to prevent Plaintiff from dispersing was an unreasonable seizure.

The Ninth Circuit in *Dubner v. City and County of San Francisco*, 266 F.3d 959 (9th Cir. 2001) held "the police are at least required to differentiate between the participants and innocent bystanders." (Id. at 968) (emphasis added); *see also Barham v. Ramsey,* 434 F.3d 565, 575 (D.C. 2006) (denying qualified immunity in arrest of undifferentiated park protestors explaining only "when compelling circumstances are present, the police may be justified in

detaining an undifferentiated crowd of protestors, **but only after providing a lawful order to disperse followed by a reasonable opportunity to comply with that order.**")

Here, the undisputed facts from Defendants and Antonetti's own testimony was that she refused to let Plaintiff leave and used force to prevent her. Issuing dispersal orders then refusing the let protestors to leave cannot be – as a matter of law – consider to be a "reasonable opportunity to comply with that order".

Moreover, Defendants' focus on who formally placed handcuffs on Brandy Wood is misplaced and non-determinative of whether other officers seized or arrested Plaintiff under the Fourth Amendment. *See Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) (indicating that, even if officers did not intend to hit students with pepperball projectiles and instead simply intended "to subject the students to a shower of pepper spray via area contamination," the officers still "intentionally directed their use of force at the students"; adding that "[w]hether the officers intended to encourage the partygoers to disperse is of no importance when determining whether a seizure occurred"); *see Economus v. City and County of San Francisco*, 2019 WL 1483804 (finding an officer's decision to step into the path of a a skateboarder going downhill during a skate contest without city permit and struck him with his shoulder was an unlawful seizure for purposes of the Fourth Amendment even though the skateboarder was never arrested was permitted to leave and the officer claimed it was an accident).

Instead, Defendant Antonetti's decision to use her bicycle, the video footage and Plaintiff's excited utterances that demonstrate she injured her indisputably show that she unreasonable seized her and broke Plaintiff's ankle.

### 3. DEFENDANTS WERE NEGLIGENT

Finally, Defendants make "much ado about nothing" so to speak with their criticisms that Plaintiff did not spill more ink on the negligence analysis. As Plaintiff showed in her Opening Brief negligence analysis tracks the "reasonable force" analysis under the Fourth

Amendment except in officer shooting cases. So there is no value or point in repeating the exact same arguments under the Fourth Amendment for negligence when the standard is the same in non-deadly force cases. *Hayes v. Cty. Of San Diego*, 57 Cal. 4th 622 (2013) (finding the negligence standard tracks the Fourth Amendment standard except for police shooting cases which analyze preshooting tactics).

## II.   CONCLUSION & RELIEF REQUESTED

For all of the aforementioned reasons, Plaintiff respectfully requests that this Court GRANT Plaintiff's Motion for Partial Summary Adjudication that: (1) Defendant Antonetti SEIZED Plaintiff in the Trader Joe's Parking Lot; (2) Defendant Antonetti SEIZED Plaintiff without probable cause of the bridge after 51st Street; (3) Defendant Antonetti used EXCESSIVE FORCE with her bike when she struck Plaintiff and/or kept the crowd from dispersing; (4) Plaintiff proved the liability portion of her Fourth Amendment and negligence claim.

Dated:  December 27, 2022                POINTER & BUELNA, LLP
                                         LAWYERS FOR THE PEOPLE

                                         /s/ Patrick Buelna
                                         PATRICK M. BUELNA
                                         ATTORNEY FOR PLAINTIFF