UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| BRANDY WOOD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SACRAMENTO, a municipal corporation; LEAH ANTONETTI, in her individual capacity as a law enforcement officer for the Sacramento Police Department; and DOES 1-50, inclusive,<br><br>　　　　Defendants. | No. 2:20-cv-00497<br><br>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARIAL SUMMARY ADJUDICATION |

----oo0oo----

Plaintiff Brandy Wood ("plaintiff") brought this section 1983 action against the City of Sacramento, Officer Leah Antonetti ("Antonetti"), and DOES 1-50 for various alleged constitutional and state tort offenses. (See Fourth Amended Complaint ("FAC") (Docket No. 46).) The case arises out of events on March 4, 2019, wherein plaintiff injured her foot at a Black Lives Matter protest. (Id.)

1

The Fourth Amended Complaint asserts four constitutional claims under section 1983 and five state law claims: excessive force (Claim 1), unlawful detention (Claim 2), First Amendment retaliation (Claim 3), municipal liability (Claim 4),[1] failure to address a serious medical need (Claim 5), Tom Bane Act (Claim 6), battery (Claim 7), negligence (Claim 8), false imprisonment (Claim 9), and false arrest (Claim 10). (See id.)

Before the court are the parties' cross motions for summary judgment or, in the alternative, partial summary judgment.[2] Defendants City of Sacramento and Antonetti move for summary judgment on all claims against them except negligence (Claim 8). (Defs.' Mot. (Docket No. 56).) Plaintiff does not challenge defendants' motion as to the Fourteenth Amendment claim for failure to address a serious medical need (Claim 5). (See Pl.'s Opp'n at 23, fn. 4.)

Plaintiff moves for partial summary judgment on the issues of liability on her claims for excessive force (Claim 1), unlawful detention or arrest (Claim 2), and negligence (Claim 8). (Pl.'s Mot. (Docket No. 57).)

I.  Factual and Procedural History

The following facts are not in dispute. On March 4, 2019, plaintiff attended a Black Lives Matter protest in

---

[1] This court previously granted defendants' motion to dismiss plaintiff's fourth claim alleging municipal liability. (Docket No. 53.)

[2] Because plaintiff's counsel did not appear for oral argument as scheduled, the motions were taken under submission pursuant to Local Rule 230(g).

2

Sacramento.³ (See Baca Decl., Ex. 7 ("Wood Depo.") at 74:23-75:3 (Docket No. 56-3).) There were approximately 150 protestors in attendance. (See Baca Decl., Ex. 8 ("McNally-Anderson Depo.") at 13:13-13:17 (Docket No. 56-3).) The protest began at 6:42 p.m. at or near the parking lot for the Trader Joe's on Folsom Boulevard and continued up and down the nearby streets. (See id. at 13:10-14:3.)

At approximately 7:21 p.m., the protestors stopped at the intersection of 46th Street and J Street. (See Leong Decl. ¶ 5 (Docket No. 56-5).) The protestors were given two dispersal orders over loudspeakers. (See id.) The protest continued. (See id.) Dispersal orders were again given at approximately 7:32 p.m. at the intersection of 45th Street and J Street, 7:42 p.m. at the intersection of 43rd Street and Folsom Boulevard,⁴ 8:00 p.m. at the intersection of 43rd and M Street, 8:16 p.m. at the intersection of 40th Street and J Street,⁵ and 8:58 p.m. at the intersection of 50th Street and Folsom Boulevard. (See id. ¶¶ 6-11.)

At 9:03 p.m., Deputy Chief Norm Leong declared the protest an unlawful assembly based on vandalism, blocking of the intersections, verbal altercations, and an individual who held a

---

³ The protest was a reaction to the announcement that there would be no charges brought in the police shooting of Stephon Clark. (FAC ¶ 11.)

⁴ At this location, 8 dispersal orders were given before the protest continued moving. (See Leong Decl. ¶ 8 (Docket No.56-5).)

⁵ At this location, which is in front of Mercy Hospital, 4 dispersal orders were given but the protest did not move until 8:34 p.m. (See id. ¶ 10.)

light flare over vehicles.[6]  (See id. ¶ 17.)  The protestors who did not disperse were subject to arrest pursuant to Cal. Penal Code § 409.[7]  (See id.)  From approximately 9:09 p.m. to 9:40 p.m., 15 dispersal orders regarding the declaration of an unlawful assembly were given over a loudspeaker so that the orders could be heard over the crowd's use of whistles and other loud sounds.  (See id. ¶¶ 12-13, 17.)  After the § 409 dispersal orders began over the loudspeaker, the crowd continued moving down the road.  (See McNally-Anderson Depo. at 31:10-31:18.)  Police officers on bicycles were then instructed to form a skirmish line on the 51st Street bridge.  (See Baca Decl., Ex. 9 ("Antonetti Depo.") at 96:11-97:1 (56-3).)  At this point, protestors were no longer free to leave.  (See id. 96:9-96:17.)  The remaining protestors were all under arrest pursuant to Cal. Penal Code § 409.

Plaintiff marched in the protest for two to three hours before she heard the dispersal orders.  (See Wood Depo. at 78:16-78:25.)  She recalls first hearing the dispersal orders while in the Trader Joe's parking lot.  (See id. at 76:7-76:11.)  She also

---

[6]  Specifically, the four incidents of possible criminal activity were: (1) a "verbal confrontation" with a "resident outside his house"; (2) a confrontation with a person wearing a "Make America Great Again" hat which resulted in the person's hat either being flipped of his head or falling off; (3) a person holding a flame, that was later determined to be a flare, over vehicles; and (4) reports of damage to vehicles.  (See Pl.'s Mot., Ex. 3 ("Leong Depo.") at 21-24 (Docket No. 57-3).)

[7]  Cal. Penal Code § 409 provides: "Every person remaining present at the place of any riot, rout, or unlawful assembly, after the same has been lawfully warned to disperse, except public officers and persons assisting them in attempting to disperse the same, is guilty of a misdemeanor."

4

1  remembers individual officers telling the protestors to
2  "disperse."⁸  (See id.)  Officers were still allowing people to
3  leave as these dispersal orders were being given.  (See Antonetti
4  Depo. 91:7-91:25; Baca Decl., Ex. 1 ("Officer Giusti Video") at
5  5:16:10-5:16:27 (Docket No. 56-3).)

6  At approximately 9:15 p.m., immediately following a
7  dispersal order, plaintiff approached an officer to ask which
8  route to take to leave the protest.  (See id.)  She was told she
9  could leave by taking an alley adjacent to the Trader Joe's.
10 (See id.)  However, plaintiff did not leave the protest.⁹  (See
11 id.)

12 At approximately 9:52 p.m., plaintiff approached
13 Antonetti, who was standing on the skirmish line.  (See Baca
14 Decl., Ex. 2 ("Officer Antonetti Video") at 5:52:39 (Docket No.
15 56-3).)  Plaintiff began to curse and insult Antonetti.  (See
16 id.)  A member of the clergy, Minister Pamela McNally-Anderson
17 ("McNally-Anderson"), who attended the protest as a part of a
18 clergy group called "Sacramento Act Area Congregations Together,"
19 witnessed the exchange between plaintiff and Antonetti. (See
20 McNally-Anderson Depo. at 38:4-39:9, 40:24-41:3; Baca Decl., Ex.
21 3 ("Officer Haden Video") at 5:53:00 (Docket No. 56-3).)

---

⁸  The dispersal orders were given approximately ten times in the Trader Joe's parking lot through a loudspeaker.  (See Baca Decl., Ex. 9 ("Antonetti Depo.") at 77:16-77:20 (Docket No. 56-3).)

⁹  According to Officer Giusti's body cam video's time stamp, this conversation with plaintiff occurred approximately thirty-seven minutes before plaintiff alleges her foot was injured.  (See Baca Decl., Ex. 1 ("Officer Giusti Video") at 5:16:10-5:16:27 (Docket No. 56-3).)

1  McNally-Anderson walked over to the two women to try to
2  deescalate the situation.[10] (See id.)  McNally-Anderson stood
3  right in front of Antonetti, thus placing her body directly in
4  between plaintiff and Antonetti. (See id.)

5       At approximately 9:53 p.m., while McNally-Anderson was
6  still standing in between plaintiff and Antonetti, the crowd of
7  protestors suddenly pushed forward towards the skirmish line
8  because a police officer had approached the other side of the
9  crowd with a pepper ball launcher.  (Baca Decl., Ex. 5 ("Officer
10 Cook Video") at 5:53:20 (Docket No. 56-3).)  The push of the
11 crowd caused McNally-Anderson to be compressed between plaintiff
12 and Antonetti.  (See McNally-Anderson Depo. at 49:4-49:15;
13 Officer Antonetti Video at 5:53:21; Antonetti Depo. at 119:14-
14 119:16.)  The time of the crowd's push, 9:53 p.m., is the precise
15 time that plaintiff believes her foot was injured.  (See Wood
16 Depo. at 126:8-126:14.)  Wood testified that her left foot was
17 injured when her foot became stuck in the spoke of a bike wheel
18 being held by an officer.  (See id. at 97:2-97:19.)

19      Plaintiff was ultimately arrested by Officer Chad Lewis
20 for violation of Cal. Penal Code § 409 -- a misdemeanor crime for
21 failure to disperse.  (See Lewis Decl. ¶ 12 (Docket No. 56-4).)
22 Plaintiff told Lewis that she was injured and needed medical
23 attention.  (See Wood Depo. at 136:11-136:20; Baca Decl., Ex. 6
24 ("Officer Lewis Video") at 6:20:21-6:21:03 (Docket No. 56-3).)

---

[10] The footage from Officer Haden's body cam shows McNally-Anderson rubbing plaintiff's arm as she stands in between plaintiff and Antonetti. (See Baca Decl., Ex. 3 ("Officer Haden Video") at 5:53:00 (Docket No. 56-3).)  The footage also shows McNally-Anderson telling the officers on the skirmish line that she is there to help them.  (See id.)

However, plaintiff declined all medical care offered, including that offered by Officer Lewis and the paramedics. (See Wood Depo at 139:9-140:22, 143:1-143:8; Lewis Video at 6:26:57-6:29:56.)

II. Legal Standard

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact." Acosta v. City Nat'l Corp., 922 F.3d 880, 885 (9th Cir. 2019). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable trier of fact to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial. Id. The burden then shifts to the non-moving party to set forth specific facts to show that there is a genuine issue for trial. See id. at 324. Any inferences drawn from the underlying facts must, however, be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio

III. Discussion

    A. Fourth Amendment Excessive Force (Claim 1)

Plaintiff first contends that defendant Antonetti

violated her Fourth Amendment right to be free from excessive force by striking plaintiff with her bike and fracturing her ankle while plaintiff was attempting to disperse. (FAC ¶¶ 22-23; Pl.'s Opp'n at 12-14.)

Under the Fourth Amendment, police may use only such force during an arrest as is objectively reasonable under the circumstances, as judged by a reasonable officer at the scene. See Graham v. Connor, 490 U.S. 386, 396-97 (1989). Excessive force claims require "balance[ing] the amount of force applied against the need for that force." Bryan v. MacPherson, 630 F.3d 805, 823-24 (9th Cir. 2010) (citation and quotations omitted).

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendments interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (citations and internal quotations omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).

Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 396-97. Thus, "the appropriate inquiry is whether the officer[] acted reasonably, not whether [she] had less intrusive alternatives

1  available to them." Scott v. Henrich, 39 F.3d 912, 915 (9th Cir.
2  1994).

3       Plaintiff argues that Officer Antonetti "used excessive
4  force with her bike when she struck [p]laintiff and/or kept the
5  crowd from dispersing." (Pl.'s Opp'n at 12). However, the
6  evidence does not raise a genuine issue in support of that
7  argument. See Celotex Corp., 477 U.S. at 324. Specifically,
8  plaintiff has not provided any evidence which suggests that
9  Officer Antonetti ever struck plaintiff with her bike or that
10 that Officer Antonetti's use of her bike on the skirmish line to
11 keep a crowd from dispersing amounted to excessive force.

12      To the contrary, the body camera videos of Antonetti,
13 Officer Bryon Stone, and Officer Timothy Haden show McNally-
14 Anderson standing in between plaintiff and Antonetti at the time
15 the crowd pushes. (See Officer Antonetti Video at 5:53:20;
16 Officer Stone Video at 5:53:20; Officer Haden Video at 5:53:20.)
17 The body cam videos also show that Antonetti did not use her bike
18 to strike plaintiff at any time, including the time at which
19 plaintiff testified she injured her foot. (See id.)

20      "When opposing parties tell two different stories, one
21 of which is blatantly contradicted by the record, so that no
22 reasonable jury could believe it, a court should not adopt that
23 version of the facts for purposes of ruling on a motion for
24 summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).
25 Plaintiff has not provided any evidence which calls into question
26 the version of the facts shown in the three body camera videos.
27 The record shows that McNally-Anderson stood in between plaintiff
28 and Antonetti and was compressed between the two women at the

time plaintiff testified she injured her foot. (See Officer Antonetti Video at 5:53:20; Officer Stone Video at 5:53:20; Officer Haden Video at 5:53:20.) Accordingly, because plaintiff has not raised a genuine dispute of material fact as to her excessive force claim against Antonetti, the court will deny plaintiff's motion for partial summary judgment on the issue of liability and grant defendant's motion for summary judgment on plaintiff's excessive force claim.

B. Fourth Amendment Unlawful Detention or Arrest (Claim 2)

Plaintiff next contends that defendant Antonetti violated her Fourth Amendment right to be free from unlawful detention or arrest by refusing to allow plaintiff to disperse. (FAC ¶ 25-26; Pl.'s Opp'n at 3.) In their motion, defendants argue that plaintiff's seizure was not unlawful. (Defs.' Mot. at 30-35.)

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer by means of physical force or show of authority terminates or restrains his freedom of movement through means intentionally applied." Nelson v. City of Davis, 685 F.3d 867, 975 (quoting Brendlin v. Cal., 551 U.S. 249, 254 (2007)). "A seizure results in a constitutional violation only if it is unreasonable." Nelson, 685 F.3d at 878 (citing Graham, 490 U.S. at 396). "The determination of unreasonableness requires us to decide 'whether the totality of circumstances justified a particular sort of seizure.'" Id. at 878 (quoting Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)). The court must balance "the nature and quality of the intrusion on the individual's Fourth

10

Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (citations omitted).

Cal. Penal Code § 409 provides: "Every person remaining present at the place of any riot, rout, or unlawful assembly, after the same has been lawfully warned to disperse, except public officers and persons assisting them in attempting to disperse the same, is guilty of a misdemeanor." An unlawful assembly occurs "[w]henever two or more persons assemble together to do an unlawful act, or do a lawful act in a violent, boisterous, or tumultuous manner." Cal. Penal Code § 407.

"The plain objective of section 409 is to enable law enforcement officers to de-fuse riotous situations by ordering persons to remove themselves from the area without any need to distinguish between the rioters and bystanders whose very presence aggravates the problem of restoring tranquility." Dubner v. City & Cnty of S.F., 266 F.3d 959, 967 (9th Cir. 2001) (quoting People v. Cipriani, 18 Cal. App. 3d 299, 309 (2nd Dist. 1971)). "California courts have since interpreted [§ 409] to require a clear and present danger of imminent violence before bystanders can be arrested along with participants in an unlawful assembly." Id. (emphasis added) (citing In re Brown, 9 Cal. 3d 612, 623 (1973)).[11]

---

[11] In In re Brown, the police declared a protest at a college campus an unlawful assembly and ordered the crowd to disperse. See 9 Cal. 3d 612, 616 (1973). Within minutes, the police encircled the crowd and placed everyone under arrest. Id. The petitioners were acquitted of charges for violating § 409. Id. at 615. The California Supreme Court held that, as to Cal. Penal Code §§ 407 (Unlawful Assembly) and 408 (Rout and Unlawful

11

Plaintiff argues that Cal. Penal Code § 409 cannot provide probable cause for her arrest because the officers did not distinguish between participants and bystanders when issuing arrests.[12] (Pl.'s Opp'n at 9-11.) Plaintiff relies on Dubner, 266 F.3d 959. There, the plaintiff attended a protest as a "legal observer," rather than a participant. See id. at 962. She was arrested after dispersal orders were given. Id. at 963. The Ninth Circuit held that "police are at least required to differentiate between the participants and innocent bystanders" where a protest is neither violent nor poses a risk of imminent violence. Id. at 968. Because the protest did not involve "a sufficient risk of violence," plaintiff contends that the arrest of nonparticipants, including the plaintiff, under § 409 was unjustified. Id.

Here, unlike Dubner, plaintiff was not an innocent bystander. Rather, it is undisputed that plaintiff marched in the protest for two to three hours before she heard the dispersal orders. (See Wood Depo. at 77:2-78:21.) From 9:09 p.m. to 9:40 p.m., the police issued multiple dispersal orders explaining that the protest had been deemed an unlawful assembly and those who

---

Assembly), what is an unlawful assembly "must be limited to assemblies which are violent or which pose a clear and present danger of imminent violence." Id. at 623.

[12] "Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed . . . an offense." Crowe v. Cnty of San Diego, 608 F.3d 406, 432 (9th Cir. 2010) (quoting Barry v. Fowler, 902 F.2d 770, 773 (9th Cir. 1990)). "[P]robable cause must be particularized with respect to the person to be searched or seized." Id. at 439 (citation omitted).

12

did not disperse were subject to arrest pursuant to § 409.  (See Leong Decl. ¶ 17.)  Plaintiff testified that she heard at least some of those dispersal orders.  (See Wood Depo. at 76:7-76:11.) At approximately 9:15 p.m., plaintiff was specifically told how she could leave the protest, but declined to avail herself of that opportunity and continued to actively participate in the demonstration for another 37 minutes.  (See Officer Giusti Video at 5:16:13-5:16:27.)

Accordingly, because plaintiff has not raised a genuine dispute that there was probable cause for her arrest under Cal. Penal Code § 409, defendants' motion for summary judgment on plaintiff's Fourth Amendment claim for unlawful detention will be granted and plaintiff's motion for partial summary judgment on the issue of liability on that claim will be denied.

C.  First Amendment Retaliation (Claim 3)

Plaintiff contends that defendant Antonetti violated her First Amendment rights by striking plaintiff with her bike and arresting plaintiff in retaliation for "cussing" and using "abusive and crude language." (Pl.'s Opp'n at 3.)  In their motion, defendants argue that Antonetti did not retaliate against plaintiff for her exercise of her First Amendment rights because there was neither excessive force nor an unlawful seizure.  (See Def.'s Mot. at 38-30.)

"The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)) (quotations omitted).  To recover under § 1983 for First

13

Amendment retaliation, a plaintiff must prove: "(1) he engaged in constitutionally protected activity;[13] (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." Ballentine v. Tucker, 28 F.4th 54, 61 (9th Cir. 2022) (quoting Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir. 2010)). Actions that are considered adverse include arrests, prosecutions, and dismissals from government. See Houston Comm. College Sys. v. Wilson, 142 S. Ct. 1253, 1260 (2022) (citations omitted).

Action taken lawfully by the police cannot be an adverse action in a retaliation claim. See Nieves, 139 S. Ct. at 1722 (citation omitted) (retaliation "must be a 'but-for' cause, meaning that the adverse action again the plaintiff would not have been taken absent the retaliatory motive"). As already discussed, the court granted summary judgment for defendants on both the excessive force and unlawful detention claims because plaintiff did not raise a genuine dispute of material fact.

Plaintiff has advanced no other arguments or provided any facts which suggest that she was subjected to any unlawful adverse action in retaliation for her speech. Her First

---

[13] Disrespectful language directed at the police is protected speech. See e.g., City of Houston v. Hill, 482 U.S. 451, 461 (1987) ("The First Amendment protects a significant amount of verbal criticism and challenge directed at police . . . . 'unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'") (quoting Terminiello v. Chicago, 337 U.S. 1, 4 (1949)).

14

Amendment retaliation claim must therefore fail.  See Ballentine, 28 F.4th at 61.  Accordingly, defendants will be granted summary judgment on plaintiff's First Amendment retaliation claim.

      D.   Tom Bane Act (Claim 6)

The Tom Bane Act gives rise to a claim when "a person . . . whether or not acting under the color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion" with a right secured by federal or state law.  Cal. Civ. Code § 52.1(a).  "[A]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States . . . has been interfered with, or attempted to be interfered with, as described in [the Tom Bane Act] . . . may institute . . . a civil action for damages . . . ."  Id. § 52.1(b).  As discussed above, the court finds that plaintiff's First and Fourth Amendment rights were not violated.  Because plaintiff's constitutional rights have not been violated, she cannot maintain a Tom Bane Act claim.[14]  Accordingly, defendants will be granted summary judgment as to plaintiff's Tom Bane Act claim.

      E.   Battery (Claim 7)

"The elements of civil battery are: (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss, or harm to plaintiff."

---

[14] Plaintiff does not assert any claims that there was any violation of her rights besides those provided for by the U.S. Constitution.

15

Brown v. Ransweiler, 171 Cal. App. 4th 516, 526-27 (4th Dist. 2009) (citation omitted).

Police officers, however, are "not similarly situated to the ordinary battery defendant and need not be treated the same." Id. at 527 (citation and quotation omitted). To assert a claim for battery against a police officer, "a plaintiff must prove that the peace officer's use of force was unreasonable." Id. Because the court has determined that defendants' use of force was reasonable, plaintiff cannot maintain a battery claim. Accordingly, defendants will be granted summary judgment on plaintiff's battery claim.

F.  Negligence (Claim 8)

Plaintiff seeks partial summary judgment on the issue of liability on her negligence claim based upon Antonetti's alleged use of excessive force.[15] (Pl.'s Mot. at 13.) While defendants do not move for summary judgment on plaintiff's negligence claim, they oppose plaintiff's motion for partial summary judgment. (See Defs.' Opp'n at 36.) As discussed above, the court found no triable issue of fact as to whether Antonetti used excessive force. See Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1412 (4th Dist. 2002) ("[I]t appears unsound to distinguish between section 1983 and state law claims arising from the same alleged misconduct.). Accordingly, the court will deny plaintiff's motion for partial summary judgment on the issue

---

[15] "[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." Hayes v. Cnty of San Diego, 57 Cal. 4th 622, 629 (2013).

16

of liability on her negligence claim.

      G.    <u>False Imprisonment and False Arrest</u> (Claims 9 and 10)

"False arrest and false imprisonment are the same tort. False arrest is a way of committing false imprisonment." <u>Cox v. Griffin</u>, 34 Cal. App. 5th 400, 446, fn. 6 (4th Dist. 2019) (citation omitted); see also <u>Martinez v. City of L.A.</u>, 141 F.3d 1373, 1379 (9th Cir. 1998). The court will therefore address these claims together.

"The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." <u>Easton v. Sutter Coast Hosp.</u>, 80 Cal. App. 4th 485, 496 (1st Dist. 2000). "Pursuant to Cal. Penal Code § 847(b)(1), a police officer shall not be held civilly liable for false arrest . . . if the police officer had reasonable cause to believe the arrest was lawful . . . ." <u>Newman v. San Joaquin Delta Cmty. Coll. Dist.</u>, 814 F. Supp. 2d 967, 979 (E.D. Cal. 2011) (Shubb, J.) (citation and quotations omitted). For the reasons discussed with respect to plaintiff's Fourth Amendment unlawful detention claim, plaintiffs have not raised a genuine issue of material fact as to whether the confinement was without lawful privilege. Accordingly, the court will grant defendants' motion with respect to the false imprisonment and false arrest claims.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment on plaintiff's claims for excessive force (Claim 1), unlawful detention (Claim 2), First Amendment retaliation (Claim 3), failure to address a serious medical need (Claim 5),

Tom Bane Act (Claim 6), battery (Claim 7), false imprisonment (Claim 9), and false arrest (Claim 10) (Docket No. 56) be, and the same hereby is, GRANTED.  IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (Docket No. 57 be, and the same hereby is, DENIED.  The sole remaining claim is plaintiff's claim for negligence against defendant Antonetti. (Claim 8).

Dated:   January 25, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE